ROBERT L. EGGERLING ET AL., APPELLANTS, V. OTTO CUHEL ET AL., APPELLEES.

246 N. W. 2d 199

Filed October 20, 1976. No. 40490.

William E. Naviaux of Corrigan, Naviaux, Kinney & Titus, and George H. Moyer, Jr., of Moyer, Moyer, & Egley, for appellants.

Kirby, Duggan & McConnell, for appellees Cuhel et al.

John M. Thor of Grady, Caskey & Thor, and Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellees Thor and Jenkinson.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action to recover a payment made to a real estate broker by a buyer in connection with a real estate purchase and sale contract. The plaintiff buyer sought to recover against three defendants, the sellers, the real estate broker, and the real estate salesman. The broker and the salesman filed motions for summary judgment. The District Court granted the motions for summary judgment and dismissed the action against the broker and the salesman. The plaintiff buyer has appealed. The action against the sellers remains pending in District Court.

On March 21, 1969, Otto and Martha Cuhel listed their 400-acre farm for sale with John Thor, doing busi-

ness as Thor Agency, in Norfolk, Nebraska. Sometime thereafter, through the efforts of Robert Jenkinson, a salesman for the Thor Agency, Robert L. and Judith A. Eggerling became interested in the property. Sometime before May 8, 1969, the Eggerlings made an offer to purchase the property on a purchase offer form, but the offer was rejected by the Cuhels. On May 8, 1969, the Eggerlings signed a contract to purchase the property and delivered to the agency a check for $4,000. The check was payable to the Thor Agency trust account, and marked "Down pymt. Knox Co. Farm." The check was deposited in the Thor Agency trust account. On May 19, 1969, the real estate broker and the salesman took the contract to the Cuhels' home in O'Neill, Nebraska, and the Cuhels signed and acknowledged the contract. At that time the broker gave the Cuhels a check for $2,300 drawn on the Thor Agency trust account, which was the $4,000 deposit minus the 5 percent commission of $1,700. The $1,700 commission was later split evenly between the broker and the real estate salesman Jenkinson.

The contract between the Cuhels and the Eggerlings provided for a purchase price of $34,000, "payable as follows:

"(a) The sum of $4,000.00 deposited herewith and the sum of $2,000.00 to be paid by buyers to sellers on or before January 1, 1970."

The balance of $28,000 was payable by buyers assuming an FHA loan of $12,000, with the $16,000 balance to be payable over a period of 20 years, beginning January 1, 1971. The sellers agreed to furnish an abstract of title showing good and merchantable title to the sellers, except for the FHA loan, within 1 year of the date of the contract, and a warranty deed was to be delivered into escrow for delivery to the buyers at such time as the terms and conditions of the contract had been fulfilled. Possession was to be delivered on January 1, 1970.

After the contract was executed between the par-

ties, the Eggerlings determined that the Cuhels did not hold the mineral rights to the land and the FHA mortgage could not be assigned by the sellers nor assumed by the buyers under FHA regulations. The Eggerlings made no payment on January 1, 1970, and possession was not transferred. Negotiations to work out the problems continued until 1972. In May of 1972, the Cuhels sold 57 acres of the property to another buyer and the Eggerlings then brought this action against the Cuhels, the broker, and the real estate salesman for the recovery of the $4,000 downpayment deposit.

Plaintiffs contend that the District Court erred in sustaining the motions for summary judgment by the broker and the salesman, and rely on section 81-875.01, R. R. S. 1943. That statute in pertinent part provided: "(1)   Each broker shall maintain a separate bank account which shall be designated a trust account wherein all downpayments, earnest money deposits or other trust funds received by the broker or his salesman on behalf of his principal or any other person shall be deposited * * *   * * *

"(6)   A broker shall not be entitled to any part of the earnest money or other money paid to him in connection with any real estate transaction as part or all of his commission or fee until the transaction has been consummated or terminated."

The statute by its terms applied only to brokers and to brokers' trust accounts. In the case before us, the salesman, Robert Jenkinson, received the $4,000 check and promptly delivered it to the broker. The statute imposed no responsibility on the salesman and the evidence is undisputed that the salesman was acting only as an agent for a disclosed principal. Under such circumstances, Jenkinson had no independent individual liability to the buyers under the statute or otherwise. The action of the District Court in granting motion for summary judgment in favor of Jenkinson was clearly proper.

Section 81-875.01, R. R. S. 1943, was regulatory and in the nature of a penal statute. Penalties for its violation involved suspension or revocation of licenses under section 81-881, R. R. S. 1943. There is no indication that the Legislature intended to create a new civil remedy against real estate brokers in addition to the penalties imposed by statute, and under such circumstances the statute should be construed narrowly and not expansively. See Trott v. Hild, 190 Pa. Super. 85, 151 A. 2d 832.

Even if the statute was deemed to have created a new civil cause of action, the statute under its terms did not apply after the transaction had been consummated or terminated. In that connection it should be noted that it is tacitly conceded in this case that the broker was entitled to his commission on May 19, 1969, when the downpayment had been paid and the contract signed by both parties. Insofar as the broker was concerned, the transaction had been consummated at that time.

In the absence of statute, courts have taken different views with respect to a broker's liability to a prospective purchaser for a refund of a deposit or earnest money when the contract of purchase later fails because of a defect in the seller's title or for other causes which would entitle the purchaser to rescind.

In Huffman v. Newman, 55 Neb. 713, 76 N. W. 409 (1898), an agent for disclosed sellers signed a sales agreement for them and accepted a downpayment of $100 from the purchaser. The agent then reported the sale to the sellers, sent them a deed to sign, and advised them that he had received the downpayment and applied it on his commission. The sellers had already approved a different sale by another agent and the premises were never conveyed to the buyer. The buyer brought an action against the agent to recover the $100 downpayment. This court held that the agent was not liable to the buyer, either in an action for conversion or for money had and received. The basis of the holding was

that where the name of the principal was disclosed, the contract was that of the principal and not of the agent. While that case is not determinative of the modern state of the law, it does touch upon the critical issue of whether the deposit or earnest money had been paid to or became the property of the sellers before or after notice of the buyer's claim or demand for refund. We think the better view to be that where a real estate broker has paid over a buyer's deposit or downpayment on a real estate contract to the broker's disclosed principal, or in good faith changed his position before he learns of the buyer's claim or demand for refund, the broker cannot be held liable for the return of the funds, in the absence of an intention to impose personal liability on the broker as shown by the circumstances and the agreement of the parties. See, Restatement, Agency 2d, § 339, p. 97; 3 Am. Jur. 2d, Agency, § 335, p. 693; 12 C. J. S., Brokers, § 144, p. 353; Annotation, 38 A. L. R. 2d 1382, and cases there cited. Neither the contract nor the circumstances here indicate an intent to impose personal liability on the broker for his principals' default, nor to make him a stakeholder trustee until merchantable title can be established.

On the record here the sellers became entitled to the $4,000 downpayment or deposit when they signed and acknowledged the contract on May 19, 1969. The broker, with the knowledge and consent of the sellers, retained $1,700 of the $4,000 as his earned commission, and paid $2,300 to the sellers. He then paid his salesman one-half of the commission. The practical effect of the transaction was no different than if the broker had paid the entire $4,000 to the sellers and taken their check for his $1,700 commission. Either way, the sellers received cash or credit from the broker for the entire $4,000. There is no allegation nor evidence of fraud or bad faith on the part of the broker or the salesman. Any liability to the buyers for the return of the $4,000

downpayment deposit now rests with the sellers, and that case remains in the District Court.

The action of the District Court in sustaining the motions for summary judgment on behalf of the broker and salesman was correct and the judgment is affirmed.

AFFIRMED.