IN RE the TERMINATION OF PARENTAL RIGHTS TO JAYTON
S., a Person Under the Age of 18:

EVELYN C. R., Petitioner-Respondent,

v.

TYKILA S., Respondent-Appellant-Petitioner.

Supreme Court

*No. 00–1739. Oral argument April 25, 2001.—Decided July
12, 2001.*

2001 WI 110

(Also reported in 629 N.W.2d 768.)

1

For the respondent-appellant-petitioner there were briefs by *Timothy A. Provis*, Madison, and oral argument by *Timothy A. Provis*.

For the petitioner-respondent there was a brief by *Theresa L. Roetter* and *Stafford Rosenbaum LLP*, Madison, and oral argument by *Theresa L. Roetter*.

There was a brief and oral argument by the guardian ad litem, *Janet Rasmussen*, Madison.

¶ 1. JON P. WILCOX, J. This is a review of a court of appeals decision, *Evelyn R. v. Tykila S.*, No. 00–1739, unpublished slip op. (Wis. Ct. App. Sept. 21, 2000), which affirmed an order by the Dane County Circuit Court, Judge Maryann Sumi, terminating Tykila S.'s (Tykila) parental rights to her biological

son, Jayton S. (Jayton). After Tykila violated a court order to appear in person at the fact-finding hearing intended to determine whether she had abandoned her son, the circuit court entered a default judgment against Tykila on the issue of abandonment without first taking any evidence on the matter. At the subsequent dispositional hearing, the circuit court accepted testimony supporting the termination of Tykila's parental rights to Jayton and, based on this testimony, reaffirmed the default judgment against Tykila and entered an order terminating Tykila's parental rights to Jayton.

¶ 2. Tykila now petitions this court to review the court of appeals decision, which affirmed the circuit court order terminating her parental rights. In doing so, she raises a single issue: Did the circuit court err in entering a default judgment on the issue of abandonment without first taking evidence sufficient to support a finding of abandonment by clear and convincing evidence?

¶ 3. We conclude that the circuit court did err in entering the default judgment against Tykila on the issue of abandonment without first taking evidence sufficient to support a finding of abandonment by clear and convincing evidence. However, upon review of the entire record in this case, we further conclude that the circuit court remedied this error at the dispositional hearing when, prior to reaffirming the default judgment and entering the order terminating Tykila's parental rights to Jayton, the court took evidence sufficient to support by clear and convincing evidence a finding that Tykila had abandoned Jayton. As such, the error was harmless. Accordingly, we affirm the decision of the court of appeals.

¶ 4. The following facts are undisputed. Jayton was born on May 2, 1992. He has lived with and been cared for by his paternal grandmother, Evelyn R. (Evelyn), for virtually his entire life, and in November 1997, Evelyn was appointed Jayton's legal guardian. For approximately five years prior to the initiation of the present proceedings, Jayton's biological mother, Tykila, had not had any contact with Jayton.

¶ 5. On October 12, 1999, in order to adopt Jayton, Evelyn filed a pro se petition in Dane County Circuit Court for the termination of Tykila's parental rights to Jayton. The circuit court subsequently held a hearing on this petition, during which it expressed concern about the facts that Evelyn's petition lacked an accompanying affidavit and neither Evelyn nor Tykila had counsel. Due to these concerns, the court ordered Evelyn and Tykila to obtain counsel, and set a date for a continued hearing.

¶ 6. On November 24, 1999, after obtaining counsel, Evelyn filed an amended petition and supporting affidavit for the termination of Tykila's parental rights to Jayton.[1] In this petition, Evelyn alleged in pertinent part that Tykila had "abandoned" Jayton, as defined by Wis. Stat. § 48.415(1)(a)3 (1997–98):[2] "Tykila [S.] knew

---

[1] This petition also requested that the court terminate Jayton's father's parental rights to Jayton. Jayton's father voluntarily waived his right to contest the petition and his parental rights to Jayton subsequently were terminated.

[2] Section 48.415(1)(a)3 of the Wisconsin Statutes (1997–98) provides that a parent has abandoned a child when: "The child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer."

or could have discovered the whereabouts of the child [Jayton], and she failed to visit or communicate with the child since December, 1994."[3]

¶ 7. Tykila denied that she had abandoned Jayton. Although she did not dispute the fact that she had not contacted Jayton since December 1994, she claimed that she did not know nor could she have discovered Jayton's whereabouts. Because Tykila contested Evelyn's petition, the court scheduled a fact-finding hearing for February 28, 2000, which, at Tykila's request, would be held before a twelve-person jury.

¶ 8. On February 28, 2000, Tykila failed to appear in person at the fact-finding hearing. The court did manage to reach Tykila by phone, but, in light of the fact that the jury would be required to determine whether Tykila had abandoned Jayton, the court expressed great apprehension about holding the hearing without Tykila's physical presence. As the court explained:

> My concern in a case like this where the sole ground is abandonment, and the defendant does not appear, does that irretrievably persuade the jury that she in fact has abandoned this child because she didn't even—you can finish the sentence for me—care enough to show up. And is that something that once the jury panel and the jurors are exposed to her appearing by telephone, I can offer any rea-

---

All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[3] Evelyn also alleged in the amended petition that Tykila had "fail[ed] to assume parental responsibility" for Jayton, as defined by Wis. Stat. § 48.415(6). However, because Evelyn later withdrew this allegation, it is not relevant to our analysis of this case.

son in the world, but I don't know that it's going to be enough to undo the impression that would be left with the jury.

Tykila's attorney agreed with the court that it likely would be highly prejudicial to Tykila to proceed with the hearing in Tykila's absence and, for this reason, objected to proceeding. In the wake of this objection, the court offered Tykila several options, including proceeding with a trial to the court. Tykila refused the court's offers and insisted that the hearing be held before a jury. Evelyn then moved for a default judgment against Tykila. The court denied Evelyn's motion, released the jury panel, and rescheduled the fact-finding hearing for April 3, 2000. However, the court issued an oral and written order that Tykila appear in person at 9:00 a.m. on April 3, 2000, and at "all subsequent proceedings held in this case," or face a potential default judgment.

¶ 9. On April 3, 2000, Tykila again failed to appear in person. Evelyn thus moved for a default judgment against Tykila. Jayton's GAL voiced "[n]o objection" to the motion. And Tykila's attorney merely stated: "I would object and waive argument." After noting on the record that Tykila was ordered to appear at 9:00 a.m. and that it was then 9:40 a.m., the court granted Evelyn's motion. The court further found, based on the allegations in Evelyn's petition for the termination of Tykila's parental rights to Jayton, that Tykila had abandoned Jayton and, as such, grounds existed under § 48.415(1)(a)3 to terminate Tykila's parental rights to Jayton. Hence, the court found Tykila to be an unfit parent and scheduled the case for a hearing to determine what disposition would be in Jayton's best interests.

¶ 10. The court held the dispositional hearing on April 11, 2000. Once again, Tykila failed to appear in person. Nonetheless, the court proceeded to hear testimony.

¶ 11. Evelyn provided the court with testimony relevant to Tykila's alleged abandonment of Jayton. Evelyn testified in part that Jayton had lived with her since May 1992, and that she and Jayton had lived in Madison since December 1994. She further testified that her address and telephone number had been listed in the telephone directory the entire time that she and Jayton had lived in Madison. Finally, Evelyn testified that although she had done nothing to prevent contact between Tykila and Jayton, Tykila had not contacted Jayton in any way since December 1994.

¶ 12. Midway through the dispositional hearing, Tykila appeared by telephone. Accordingly, the court offered her the opportunity to be heard. But although Tykila offered brief testimony, she did not say anything regarding Jayton or contest the court's entry of default judgment against her. Rather, she merely gave a one-sentence statement about why she had missed an earlier proceeding. When the court asked if she had anything else to say, Tykila replied "no."

¶ 13. At the close of the testimony, the circuit court considered the evidence before it and reaffirmed its entry of default judgment against Tykila:

> At this point then I need to consider the standards, the factors that are set forth in the statutes governing termination of parental rights. I would note that Tykila [S.], the mother, has repeatedly been in default.[4] The court has given her numerous oppor-

---

[4] This seems to be a reference to the fact that Tykila violated the circuit court order to appear in person not only by

tunities, including discharging an entire jury panel at one point so that she could appear in person, even though an order for appearance had gone out. So I'm satisfied that the default is sound.

I'm also satisfied that grounds exist, that being the ground of abandonment, as established through the testimony of. . .Evelyn [R.] today. So grounds exist for the termination of parental rights of Tykila [S.].

Then, after noting that Tykila's abandonment of Jayton provided grounds to terminate Tykila's parental rights to Jayton, the court concluded that it would be in Jayton's best interests to terminate Tykila's parental rights to him so he could be adopted by Evelyn. The court thus entered an order terminating Tykila's parental rights to Jayton and subsequently signed an order granting a petition by Evelyn to adopt Jayton.

¶ 14. Tykila appealed the circuit court's order terminating her parental rights to Jayton. The court of appeals, however, affirmed the order.

¶ 15. Tykila then petitioned this court for review of the court of appeals decision. We granted review.

## II

¶ 16. Tykila raises a single issue for review: Did the circuit court err in entering a default judgment on the issue of abandonment without first taking evidence sufficient to support a finding of abandonment by clear and convincing evidence? Tykila concedes that the circuit court had the authority to enter a default judgment against her as a sanction for failing to comply

_____

failing to appear in person at the second fact-finding hearing, but also by failing to appear in person at the dispositional hearing.

with the court order for personal appearance. However, Tykila contends that this authority did not relieve the circuit court of its constitutional and statutory duty to find by clear and convincing evidence—prior to finding her to be an unfit parent—that she had abandoned Jayton. Because the circuit court entered default judgment without taking any evidence, Tykila further contends, there was no evidentiary basis to support the court's finding of abandonment; the circuit court thus could not find by clear and convincing evidence that she had abandoned Jayton. Therefore, Tykila concludes, the circuit court erred in entering the default judgment against her on the issue of abandonment without first taking evidence. We agree.

## A

■

¶ 17. This case does not fall within the scope of Wis. Stat. § 806.02(5).[5] Although Tykila was not physically present at the fact-finding hearing, she nevertheless "appeared" at the hearing via her counsel. Thus, § 806.02(5) does not govern the outcome of this case. Nevertheless, a circuit court has both inherent authority and statutory authority under Wis. Stat. §§ 802.10(7),[6] 804.12(2)(a),[7] and 805.03[8] to sanction

---

[5] Section 806.02(5) of the Wisconsin Statutes provides: "A default judgment may be rendered against any defendant who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof."

[6] Section 802.10(7) of the Wisconsin Statutes provides: "SANCTIONS. Violations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03."

[7] Section 804.12(2)(a) of the Wisconsin Statutes provides in part:

parties for failing to obey court orders. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273–74, 470 N.W.2d 859 (1991) (noting the same, but citing a prior version of the Wisconsin Statutes). Pursuant to this authority, a circuit court may enter a default judgment against a party that fails to comply with a court order. *See* Wis. Stat. §§ 802.10(7), 804.12(2)(a), 805.03; *see generally Chevron Chem. Co. v. Deloitte & Touche LLP*, 207 Wis. 2d 43, 557 N.W.2d 775 (1997).

¶ 18. The decision whether to enter a default judgment is a matter within the sound discretion of the circuit court. *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶ 9, 242 Wis. 2d 153, 624 N.W.2d 375. But where a circuit court has applied an incorrect legal standard in deciding whether to enter judgment, the court has erroneously exercised its discretion. *Oostburg State Bank v. United Sav. & Loan Ass'n*, 130 Wis. 2d 4, 11–12, 386 N.W.2d 53 (1986). In such a circumstance, this court may reverse the circuit court's discretionary decision. *Id.* at 11.

¶ 19. In the case at hand, by entering a default judgment against Tykila on the issue of abandonment

---

If a party. . .fails to obey an order . . ., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . .

3. An order. . .rendering a judgment by default against the disobedient party. . . .

[8] Section 805.03 of the Wisconsin Statutes provides in part:

[F]or failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

14

without first taking evidence sufficient to support such a finding, the circuit court failed to comply with the constitutional and statutory requirements for termination of parental rights. We therefore hold that the court erroneously exercised it discretion.

B

¶ 20. Terminations of parental rights affect some of parents' most fundamental human rights. *T.M.F. v. Children's Serv. Soc'y*, 112 Wis. 2d 180, 184, 332 N.W.2d 293 (1983). At stake for a parent is his or her "interest in the companionship, care, custody, and management of his or her child." *Id.* Further, the permanency of termination orders "work[s] a unique kind of deprivation. In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28 (1996) (citations and quotations omitted). For these reasons, "parental termination decrees are among the most severe forms of state action." *Id.*

¶ 21. Due to the severe nature of terminations of parental rights, termination proceedings require heightened legal safeguards against erroneous decisions. Although termination proceedings are civil proceedings, *M.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 442, 342 N.W.2d 410 (1984), the Due Process Clause of the Fourteenth Amendment to the United States Constitution[9] requires that "[i]n

___

[9] The Due Process Clause in the Fourteenth Amendment to the United States Constitution provides: "nor shall any State

15

order for parental rights to be terminated, the petitioner must show by clear and convincing evidence that the termination is appropriate." *L.K. v. B.B.*, 113 Wis. 2d 429, 441, 335 N.W.2d 846 (1983) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982)).

¶ 22. This constitutional safeguard is reflected in Wisconsin's Children's Code, Wis. Stat. Chapter 48. As delineated in the Children's Code, when a parent contests the termination of his or her parental rights, the termination proceeding involves a two-step procedure. *Waukesha County Dep't of Soc. Servs. v. C.E.W.*, 124 Wis. 2d 47, 60, 368 N.W.2d 47 (1985); *see also* Wis. Stat. § 48.422 (setting forth the different procedural frameworks for contested and uncontested termination proceedings). The first step is a fact-finding hearing "to determine whether grounds exist for the termination of parental rights. . . ." Wis. Stat. § 48.424. During this step, the parent's rights are paramount. *See Minguey v. Brookens*, 100 Wis. 2d 681, 689, 303 N.W.2d 581 (1981). To protect these rights from erroneous termination, the Children's Code provides that at the fact-finding hearing, "[t]he petitioner must prove the allegations [supporting grounds for termination] in the petition for termination by *clear and convincing evidence*." *C.E.W.*, 124 Wis. 2d at 60 (emphasis added; quotation and citation omitted); Wis. Stat. § 48.31(1). If the petitioner surmounts this evidentiary burden, the circuit court "shall find the parent unfit" and advance to the second step of the termination procedure. Wis. Stat. § 48.424(4).

deprive any person of life, liberty, or property, without due process of law. . . ."

¶ 23. The second step is the dispositional phase. At the dispositional phase, as the name of this phase implies, "the circuit court decides the disposition of the child." *C.E.W.*, 124 Wis. 2d at 60. During this step, the best interests of the child are paramount. Wis. Stat. § 48.426. However, the parent's rights are not ignored. The parent has the right to present evidence and be heard at the dispositional phase. Wis. Stat. § 48.427(1)–(1m). And if the circuit court finds during the dispositional phase "that the evidence does not warrant the termination of parental rights," the court need not terminate the parent's rights. Wis. Stat. § 48.427(2).

¶ 24. In the case at hand, the circuit court erred during the first step of this procedure. Evelyn alleged as the sole ground for the termination of Tykila's parental rights that Tykila had "abandoned" Jayton, as defined by Wis. Stat. § 48.415(1)(a)3. Thus, pursuant to the Fourteenth Amendment and the Wisconsin Children's Code, Wis. Stat. §§ 48.31 and 48.424, prior to determining that grounds existed to terminate Tykila's parental rights, the circuit court had the duty at the fact-finding hearing to find by clear and convincing evidence that all of the elements of § 48.415(1)(a)3 had been satisfied: "(1) the child has been left by the parent with a relative or other person; (2) the parent knows or could discover the whereabouts of the child; and (3) the parent has failed to visit or communicate with the child for a period of [6 months] or longer." *S.-G. v. S.-G.*, 194 Wis. 2d 365, 372, 533 N.W.2d 794 (1995). However, by entering a default judgment against Tykila on the issue of abandonment without first taking evidence, the circuit court did not make—and, indeed, could not

make—such a finding. Because it failed to take evidence at the fact-finding hearing, the circuit court had no evidentiary basis to support its finding of abandonment prior to finding grounds for the termination of Tykila's parental rights.

██

¶ 25. Where, as in the present case, the constitution and statutory code require a showing of proof before the circuit court can enter a particular judgment or order, the circuit court cannot enter the judgment or order without the appropriate showing. To be sure, the circuit court may, as it did here, determine that a party's action or inaction provides adequate cause for sanctions against that party. But such cause does not allow the court to dispense with any independent constitutional or statutory burden of proof that must be satisfied prior to entering a judgment or order.

██

¶ 26. The circuit court in the present case breached this principle. As Tykila acknowledges, her violation of the order for personal appearance supplied the circuit court with adequate cause to sanction her by means of a default judgment. However, this cause did not relieve the circuit court of its duty under the Fourteenth Amendment and Wis. Stat. Chapter 48 to take sufficient evidence—prior to finding Tykila to be an unfit parent—to support a finding by clear and convincing evidence that Tykila had abandoned Jayton. By entering a default judgment against Tykila on the issue of abandonment without first taking this constitutionally and statutorily required evidence, the circuit court erroneously exercised its discretion.

## C

¶ 27. Our conclusion that the circuit court erroneously exercised its discretion does not end our review of this case. We also must determine whether this error requires us to reverse the court of appeals decision and the circuit court order terminating Tykila's parental rights to Jayton.

■■■■

¶ 28. Section 805.18(2) of the Wisconsin Statutes provides in pertinent part:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of. . .error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has *affected the substantial rights* of the party seeking to reverse or set aside the judgment, or to secure a new trial.

(Emphasis added.) For an error to "affect the substantial rights" of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *State v. Dyess*, 124 Wis. 2d 525, 543, 547, 370 N.W.2d 222 (1985); *see also Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986) (noting that the standard set forth in *Dyess* applies in civil cases as well as criminal cases). A reasonable possibility of a different outcome is a possibility sufficient to undermine confidence in the outcome. *Dyess*, 124 Wis. 2d at 544–45 (quotation omitted). If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless.

¶ 29. Last term, in *Waukesha County v. Steven H.*, 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, we applied harmless error analysis to a case similar to the one presently at hand. *Steven H.* involved a respondent to a termination of parental rights petition who voluntarily waived his right to contest the allegations in the petition. *Id.* at ¶ 51. Based largely on this waiver, and without first taking testimony to support the allegations in the petition, the circuit court found that grounds existed to terminate the respondent's parental rights. *Id.* at ¶ 54.

¶ 30. On review of *Steven H.*, we concluded that the circuit court erred in failing to take testimony to support the allegations in the petition to terminate the respondent's parental rights. *Id.* at ¶ 56. As we explained, the respondent's waiver of his right to contest the petition was not tantamount to the respondent admitting the allegations in the petition; the circuit court still had the duty to make findings sufficient to support the allegations in the petition for termination. *Id.* at ¶¶ 52, 56.

¶ 31. Nonetheless, we concluded in *Steven H.* that the circuit court's failure to take testimony did not require us to overturn the order terminating the respondent's parental rights. *Id.* at ¶ 57. Rather, we noted that "[a] factual basis for several of the allegations in the petition c[ould] be teased out of the testimony of other witnesses at other hearings when the entire record [wa]s examined." *Id.* at ¶ 58. Based on this factual basis, we held that although we had grave concerns about the circuit court's failure to follow the statutory procedure for termination proceedings, our examination of the entire record persuaded us that the circuit court's error was not sufficient to justify overturning the termination order. *Id.* at ¶ 60.

¶ 32. We find *Steven H.* to be instructive in the present case. Although the circuit court in the case at hand may have procedurally erred, we nonetheless must examine the entire record to determine whether it provides a factual basis to support the court's finding of grounds for termination.

¶ 33. In the present case, the circuit court did not enter its order terminating Tykila's parental rights until after taking Evelyn's testimony and, based on this testimony, reaffirming its finding of abandonment. At the time the court reaffirmed its finding of abandonment and prior to the court ordering the termination of Tykila's parental rights, the record contained sufficient facts to support the circuit court's finding of abandonment. First, the record contained evidence that Tykila had left Jayton with Evelyn: as Evelyn explained in her testimony, Jayton had lived with her since May 1992. Second, there was evidence that Tykila knew or could have discovered Jayton's whereabouts: Evelyn testified that her telephone number and address had been listed in the telephone directory throughout all of the approximately five years preceding the commencement of this case. And third, the record contained evidence that Tykila had failed to visit or communicate with Jayton for far more than six months: Evelyn's testimony revealed that Tykila had not contacted Jayton since December 1994; that is, at the time Evelyn filed her petition for the termination of Tykila's parental rights to Jayton, Tykila had not contacted Jayton for about five years—approximately ten times the amount of time necessary under § 48.415(1)(a)3 to constitute abandonment. Although given the opportunity to do so, Tykila did not dispute any of these facts.

¶ 34. In addition, the record reflects that the circuit court weighed these facts prior to reaffirming its

finding of abandonment and terminating Tykila's parental rights. Indeed, the circuit court made specific reference to Evelyn's testimony when it reexamined whether grounds existed for the termination of Tykila's parental rights.

¶ 35. With these considerations in mind, we hold that the circuit court's failure to take evidence prior to entering the default judgment against Tykila fails to undermine our confidence in the outcome of the termination proceeding. Accordingly, while this case again raises the concerns that we expressed in *Steven H.* about the circuit court failing to follow the procedures delineated in Chapter 48, we conclude that the circuit court's procedural error was harmless.

### III

¶ 36. In sum, we hold that the circuit court erred in entering a default judgment against Tykila regarding the issue of abandonment without first taking evidence sufficient to support a finding by clear and convincing evidence that Tykila indeed had abandoned Jayton. However, we further hold that because the record—when examined in its entirety—reveals that prior to reaffirming the default judgment and issuing the order terminating Tykila's parental rights, the circuit court had taken and considered evidence sufficient to support its finding of abandonment, the circuit court's procedural error was harmless. Therefore, we affirm the decision of the court of appeals, which upheld the circuit court order terminating Tykila's parental rights to Jayton.

*By the Court.*—The decision of the court of appeals is affirmed.

22

¶ 37. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*.

> Errors are the insects in the world of law, travelling through it in swarms, often unnoticed in their endless procession. Many are plainly harmless; some appear ominously harmful. Some, for all the benign appearance of their spindly traces, mark the way for a plague of followers that deplete trials of fairness.
>
> The well-being of the law encompasses a tolerance for harmless errors adrift in an imperfect world. Its well-being must also encompass the capacity to ward off the destroyers. So an inquiry into what makes error harmless, though one of philosophical tenor, is also an intensely practical inquiry into the health and sanitation of the law.

Roger J. Traynor, Foreword, *The Riddle of Harmless Error* (1970).

¶ 38. The harmless error doctrine, as applied in state and federal courts alike, has inspired several decades of commentary, criticism, skepticism, and attempted clarification.[1] This academic and judicial

---

[1] *See, e.g.*, Roger J. Traynor, *The Riddle of Harmless Error* (1970) (proposing several different variations of the harmless error standard depending on the nature of the error); Harry T. Edwards, *Madison Lecture: To Err is Human, But Not Always Harmless: When Should Legal Error Be Tolerated*, 70 N.Y.U. L. Rev. 1167, 1199 (1995) (expressing skepticism that "in practical application we can ever solve the riddle of harmless error").

*See also* James Edward Wicht III, *There is No Such Thing as a Harmless Constitutional Error: Returning to a Rule of Automatic Reversal*, 12 B.Y.U. Pub. L. 73 (1997); Gregory Mitchell, *Against "Overwhelming" Appellate Activism: Constraining Harmless Error Review*, 82 Calif. L. Rev. 1335 (1994); Vilija Bilaisis, Comment, *Harmless Error: Abettor of Courtroom Misconduct*, 74 J. Crim. L. & Criminology 457 (1983); Comment,

scrutiny will likely continue to flourish as this court and other courts expand the harmless error doctrine to violations of substantive rights in which the effect of the error is difficult, if not impossible, to quantify.[2]

¶ 39. The present case, like other cases this year[3] and in prior years,[4] requires this court to apply the harmless error doctrine. Some may view the cases decided today as an opportunity to "fix" Wisconsin's

*Confusion in the Court: Wisconsin's Harmless Error Rule in Criminal Appeals*, 63 Marq. L. Rev. 643 (1980). For a discussion of reversible error and the review function, and a critique of Wisconsin case law, see Ruggero J. Aldisert, *The Judicial Process: Readings, Materials and Cases* 706–42 (1976).

[2] *See, e.g., State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223 (applying harmless error doctrine to the circuit court's failure to strike a biased juror for cause, requiring the defendant to use a peremptory challenge to remove the juror).

[3] *See also Green v. Smith*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; *Nommenson v. Amer. Cont'l*, 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301; *Lindell*, 2001 WI 108.

[4] *See, e.g., State v. Mendoza*, 227 Wis. 2d 838, 864, 596 N.W.2d 736 (1999); *State v. Jones*, 226 Wis. 2d 565, 597–98, 594 N.W.2d 738 (1999); *State v. Agnello*, 226 Wis. 2d 164, 178–79, 593 N.W.2d 427 (1999); *State v. Armstrong*, 223 Wis. 2d 331, 367–71, 588 N.W.2d 606 (1999); *State v. Sullivan*, 216 Wis. 2d 768, 792–94, 576 N.W.2d 30 (1998); *State v. Jackson*, 216 Wis. 2d 646, 668–69, 575 N.W.2d 475 (1998); *State v. Huntington*, 216 Wis. 2d 671, 695–96, 575 N.W.2d 268 (1998); *State v. Alexander*, 214 Wis. 2d 628, 652–54, 571 N.W.2d 662 (1997).

This court has also applied the harmless error doctrine in the context of administrative agency determinations. *See, e.g., Responsible Use of Rural and Agric. Land v. PSC*, 2000 WI 129, ¶ 63, 239 Wis. 2d 660, 619 N.W.2d 888; *State ex rel. Anderson-El v. Cooke*, 2000 WI 40, ¶¶ 21–24, 234 Wis. 2d 626, 610 N.W.2d 821.

harmless error doctrine once and for all. I do not share this sentiment. Appellate courts should not tinker with the harmless error doctrine without the benefit of briefing by both parties, oral argument on the issue, and an exploration of the federal and state cases and the historical development of the law.[5]

¶ 40. Our cases and scholarly commentary reveal that the doctrine of harmless error is a work in progress.[6] Numerous approaches have been explored in the legal literature. For example, Justice Roger Traynor and others have proposed that the harmless error test might vary depending on the nature of the error.[7] For errors at trial that affect some aspect of the fact-finding process, Justice Traynor proposed that the appellate court reverse unless it finds it "highly probable that the error did not affect the judgment."[8] Justice Traynor would require reversal for "errors that carry a high risk of prejudice to the judicial process itself," such as errors relating to the composition of a jury.[9] Likewise, Justice Traynor would require reversal for

[5] See also State v. Grant, 139 Wis. 2d 45, 88, 406 N.W.2d 744 (1987) (Abrahamson, J., concurring).

[6] See, e.g., 5 Wayne R. LaFave et al., Criminal Procedure § 27.6(b), at 938–39 (2d ed. 1999) ("Few areas of doctrinal development have been marked by greater twisting and turning than the development of standards for applying the harmless error rule.").

[7] See also 5 Wayne R. LaFave et al., Criminal Procedure § 27.6(b) at 934–36 (2d ed. 1999) (noting that courts have long applied the harmless error statute differently depending on the nature of the right violated).

[8] See Roger J. Traynor, The Riddle of Harmless Error 35, 49–51 (1970).

[9] See Roger J. Traynor, The Riddle of Harmless Error 64–66 (1970) (noting that a defendant challenging, for example, the denial of the right to peremptory challenges could not possibly

errors "that inherently carr[y] a high risk of affecting the judgment," such as admitting an unlawfully obtained confession or not policing against the effect of prejudicial pretrial publicity.[10]

¶ 41. My hope is for increased discussion of the doctrine of harmless error and educational programs for the bench and the bar regarding the application of, and limitations of, the doctrine. Appellate counsel should continue to brief the issue of harmless error in requests for new trials.

¶ 42. Although I join the majority opinion, for the reasons set forth, I write separately.

¶ 43. N. PATRICK CROOKS, J. *(concurring)*. I agree with the majority's decision today and write separately only to remark upon the harmless error test utilized by the majority. *See* majority op. at ¶ 27. The majority's standard is whether there is "a reasonable possibility that the error contributed to the outcome," and that a "reasonable possibility" is one "sufficient to 'undermine confidence in the outcome.' " *Id.* (quoting *State v. Dyess*, 124 Wis. 2d 525, 544–45, 370 N.W.2d 222 (1985)). Since the standard for harmless error is the same for civil, as well as criminal, cases (*Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986)), it is imperative that the standard be accurately conveyed.

¶ 44. For at least the past 35 years, this court has wrestled with formulating a standard for harmless error. *See, e.g., Pulaski v. State*, 24 Wis. 2d 450, 456–57,

show prejudice, and that the appellant "should not be called upon to do the impossible at the appellate stage").

[10] *See* Roger J. Traynor, *The Riddle of Harmless Error* 58–64 (1970).

129 N.W.2d 204 (1964); *State v. Spring*, 48 Wis. 2d 333, 339–40, 179 N.W.2d 841 (1970); *Wold v. State*, 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973); *State v. Grant*, 139 Wis. 2d 45, 406 N.W.2d 744 (1987). In an attempt to formulate a single, uniform test for harmless error, *Dyess* "conclude[d] that the test of prejudice as formulated in *Strickland* subsumes the various statements of the harmless error test that this court has used over the years." *Dyess*, 124 Wis. 2d at 545.[1] The *Strickland* case referred to is *Strickland v. Washington*, 466 U.S. 668, 693 (1984), and the test is whether "there is a *reasonable probability*" that "but for" the error, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694 (emphasis added). *Dyess* obviously adopted that test, but incorrectly assumed that there was no real difference between using "reasonable possibility" instead of "reasonable probability." 124 Wis. 2d at 544. Granted, *Dyess* applied its test by stating that "[i]n the present case, the *probability* to be weighed is whether the defendant would have been acquitted." *Id.* at 546 (emphasis added). However, as evident in the major-

---

[1] *Dyess'* single test for harmless error standard has not been without controversy. *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985). In addition to the majority opinion's discussion of *Dyess'* harmless error standard, authored by Justice Day, in *State v. Grant*, 139 Wis. 2d 45, 406 N.W.2d 744 (1987), Chief Justice Heffernan, Justice Day, Justice Abrahamson, and Justice Callow separately concurred on the *Dyess* issue. The controversy has continued. *See State v. Dodson*, 219 Wis. 2d 65, 92–98, 580 N.W.2d 181 (1998) (Crooks, J., concurring, joined by Justice Steinmetz and Justice Wilcox).

ity's opinion here today,[2] Wisconsin courts have frequently used the term "reasonable possibility," and have not indicated that, in the context of a harmless error standard, possibility means probability.[3]

¶ 45. There can be no doubt that there is a significant difference between what is reasonably probable and what is reasonably possible. "A possibility test is the next thing to automatic reversal." *Wold v. State*, 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973).[4] While I agree that the focus should be "on whether the error 'undermine[s] confidence in the outcome,' " (*Dyess*, 124 Wis. 2d at 545 (*quoting Strickland*, 466 U.S. at 694)), if that error need only possibly undermine the confidence in the outcome, rather than probably, appellate courts,

---

[2] *See also, Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 246 N.W.2d 201; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; and *Nommensen v. American Cont'l Ins. Co.*, 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301. (I have written dissents or concurrences in these cases.) *But see State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223 (*Strickland*'s probability sufficient to undermine the confidence in the outcome test used to determine ineffective assistance of counsel claim).

[3] According to my research, on few occasions since *Dyess* has this court, in a majority opinion, noted that reasonable possibility means reasonable probability. *See State v. Armstrong*, 223 Wis. 2d 331, 372 n.40, 588 N.W.2d 606 (1999); *see also State v. Huntington*, 216 Wis. 2d 671, 695–96, 575 N.W.2d 268 (1998). However, several court of appeals opinions have applied the *Dyess* harmless error test using the correct "reasonable probability" standard. *See, e.g., State v. A.H.*, 211 Wis. 2d 561, 569, 566 N.W.2d 858 (Ct. App. 1997); *State v. Joseph P.*, 200 Wis. 2d 227, 237, 546 N.W.2d 494 (Ct. App. 1996).

[4] *Wold*'s "reasonable probability" test for harmless error was replaced by *Dyess*' "reasonable possibility" test.

28

and circuit courts considering motions after verdict and post-convictions motions, will find themselves invading the purview of the jury. A cornerstone of the common law is deference to the jury, which is diluted by determining whether the alleged error possibly, and only possibly, may have affected the jury's decision.

¶ 46. I do not take issue with the term "reasonable possibility," so long as it is made clear that this term means reasonable probability, and probability is the standard to be applied. Accordingly, I offer the following test for harmless error, which makes clear that *Dyess'* use of the term "reasonable possibility" is intended to require "reasonable probability":

> Wisconsin Stat. § 805.18(2) provides that an error requires reversal only where it has "affected the substantial rights of the party" claiming error. We have long recognized that the focus of a court's analysis under this statute is whether, in light of the applicable burden of proof, the error is significant enough to "undermine confidence in the outcome" of the trial. *Dyess,* 124 Wis. 2d at 544–45. An error is significant enough to undermine confidence in the outcome if there is a reasonable probability of a different outcome without the error. *Dyess* made it clear that "probability" is substantially the same as "possibility" under Wisconsin law. *Id.* at 544.

¶ 47. Even though the majority used a "reasonable possibility" test, the error at issue here—that the circuit court erroneously exercised its discretion in entering a default judgment against Tykila S.—would be harmless under the more stringent "reasonable probability" test. I joined the unanimous majority opinion in a similar case decided last term, *Waukesha County v. Steven H.*, 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, wherein we concluded that the circuit

court's error there—its failure to hear testimony in support of the allegations in the petition to terminate parental rights—was harmless because it did not prejudice the parent, Steven H. *Id.* at ¶¶ 53–57. I find no substantive distinction between *Steven H.* and the instant case.

¶ 48. That Wisconsin courts have often used "reasonable possibility" rather than "reasonable probability" should not dissuade the court from correcting such missteps today. *See, e.g., State v. Sullivan* 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998); *State v. Alexander*, 214 Wis. 2d 628, 653, 571 N.W.2d 662 (1997). There is no time like the present—*dum fervet opus*[5]—when the court has before it five cases wherein it discusses the harmless error standard, to clarify *Dyess*.

¶ 49. For the reasons stated herein, I respectfully concur.

¶ 50. I am authorized to state that Justice JON P. WILCOX joins this opinion.

---

[5] "While the action is fresh; in the heat of action." *Black's Law Dictionary* 518 (7th ed. 1999).