# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2022AP248**
**2022AP249**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2020TP29
2020TP30

## IN COURT OF APPEALS
## DISTRICT IV

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.G.,
A PERSON UNDER THE AGE OF 18:

ROCK COUNTY HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A.P.,

    RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.P.,
A PERSON UNDER THE AGE OF 18:

ROCK COUNTY HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

A.P.,

    RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Rock County: MICHAEL A. HAAKENSON, Judge. *Affirmed.*

¶1 GRAHAM, J.[1] Amanda P. appeals from circuit court orders terminating her parental rights to her two children, A.G. and A.P.[2] Amanda argues that the court erroneously exercised its discretion when it found her in default during the grounds phase of this termination of parental rights (TPR) proceeding without first finding that her failure to appear in person or by counsel at the initial hearing was egregious or in bad faith. She further argues that the court erroneously exercised its discretion when it denied her motion to vacate the default finding.[3] I reject Amanda's arguments and affirm.

## BACKGROUND

¶2 The Rock County Human Services Department filed petitions to terminate Amanda's parental rights regarding A.G. and A.P. on the grounds that Amanda had abandoned the children and that the children were in continuing need of protection and services. *See* WIS. STAT. § 48.415(1)(a)2. and (2)(a). The

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

[2] This court has consolidated these two confidential cases for purposes of appeal. For ease of reading, I refer to the appellant by a pseudonym and to her children by their initials.

[3] I note that Amanda's appellate reply brief was filed several days late. Nevertheless, on my own motion, I accept the late brief for filing.

County also sought to terminate A.P.'s father's parental rights.[4] A.G.'s father is deceased.

¶3 The circuit court scheduled an initial hearing for July 28, 2020. It issued a summons for each case that was consistent with the requirements set forth in WIS. STAT. § 48.42(3) and (4)(c). Among other things, the summonses provided notice of the location and date of the initial hearing. Additionally, consistent with § 48.42(4)(c)1., the summonses stated that, if Amanda failed to appear at the hearing, "the court may hear testimony in support of the allegations in the attached Petition and grant the request of the petitioner to terminate [her] parental rights." Amanda does not contest that she was personally and timely served with the summonses as well as the petitions and other documents pertaining to the TPR proceedings no later than July 15, 2020.

¶4 The circuit court held the initial hearing by zoom due to the COVID-19 pandemic. The attorney for the County, the guardian ad litem who had been appointed to represent the children's best interests, and A.P.'s father, among others, appeared at the hearing. The court advised A.P.'s father of his rights and scheduled further court dates pertaining to the proceeding against him.

¶5 Amanda did not appear at the initial hearing, nor did any attorney appear on her behalf. The circuit court stated the following based on a representation by Jennifer Varela, who is a social worker employed by the County:

> The record should reflect that prior to calling the case, Ms. Varela indicated that she had communicated with [Amanda]. That's the mother of both of the children. And

---

[4] A.P.'s father did not appeal the circuit court order terminating his rights, and I discuss his case only as needed to make sense of procedural facts relating to Amanda's appeal.

> that [Amanda] was at work, and that she must have forgotten about today's court appearance.

Varela agreed that the court's summary of the facts related to Amanda's non-appearance was fair. Varela added that Amanda had confirmed that she had received notice of the hearing, that Varela told Amanda that the court might find her in default for failing to appear, and that Amanda responded that "that might just have to be the case" because she could not leave work.

¶6     The circuit court proceeded to the grounds phase of the TPR proceedings against Amanda.[5]   The court took evidence related to Amanda's failure to appear, and about whether there were grounds to terminate her parental rights to both children.  The court found that Amanda had received notice of the initial hearing, that she had not made any attempt to participate in the hearing or to have it rescheduled, and that she was in default.[6]   The court further determined

---

[5] TPR proceedings involve a two-step procedure. ***State v. Shirley E.***, 2006 WI 129, ¶26, 298 Wis. 2d 1, 724 N.W.2d 623.  The first step is the grounds phase, sometimes referred to as the "fact-finding" phase, which consists of an evidentiary hearing to determine whether there are statutory grounds to find the parent unfit. WIS. STAT. § 48.424; ***Shirley E.***, 298 Wis. 2d 1, ¶27. The second step is the dispositional phase, which consists of an evidentiary hearing at which the circuit court determines whether termination of parental rights is in the child's best interests. WIS. STAT. § 48.427; ***Shirley E.***, 298 Wis. 2d 1, ¶28.

[6] In her appellant's brief, Amanda asserts (without proper citation to the record) that the circuit court found her in default only as to A.P., and not as to A.G.  This assertion misconstrues the facts.  Although the court did not specifically use the word "default" when discussing A.G.'s case, it found that Amanda had been given notice and failed to appear, and it proceeded to find that Amanda was unfit as to A.G.  Thus, the court implicitly determined that Amanda was in default in the proceeding regarding A.G., consistent with the court's explicit determination that Amanda was in default in the proceeding regarding A.P. *See* ***Chester B. v. Larry D.***, Nos. 2011AP925 and 2011AP926, unpublished slip op., ¶1 n.2 (WI App Nov. 2, 2011) (acknowledging an implicit determination of default under similar circumstances).

that there were grounds to terminate Amanda's parental rights regarding both children.[7]

¶7     Amanda appeared via zoom at the next scheduled status hearing. She informed the court that she had not appeared at the initial hearing due to "miscommunication" and because she got her "dates mixed up," and she stated that she wanted to be represented by counsel and to contest termination of her parental rights. The court indicated that it was not going to vacate its prior finding of default at that time, and it encouraged her to reach out to the public defender's office for representation.[8]

¶8     Amanda was appointed counsel, and she personally appeared at some (but not all) of the subsequent circuit court proceedings with her attorney.

---

[7] The court went on to consider the factors that would be relevant in the dispositional phase regarding A.G. Based on its assessment of those factors, the court concluded that it was in A.G.'s best interest to terminate Amanda's parental rights. The court purported to enter an oral order terminating Amanda's parental rights as to A.G., but it did not enter a written order to that effect at that time.

Amanda comments on this aspect of the procedure in the fact section of her appellant's brief. However, Amanda does not develop any argument about this aspect of the proceedings, likely because any irregularity, if there was one, was harmless. At the close of the initial hearing, the County's attorney asked the court to call both cases (that is, the case pertaining to A.G. as well as the case pertaining to A.P.) at the next hearing "in case the mother does appear at that hearing," and the court agreed to do so. After Amanda appeared at the next scheduled status conference, the County's attorney asserted that the disposition phase regarding A.G. would have to be redone. Evidently, the court agreed—it later scheduled a dispositional hearing pertaining to both girls, and it took evidence and determined that terminating Amanda's parental rights was in A.G.'s best interest at the same time the court held the dispositional hearing pertaining A.P.

[8] The circuit court also advised Amanda of her rights. In the fact section of her appellant's brief, Amanda appears to take issue with aspects of the court's recitation, but she does not develop any argument on this point, and we address it no further.

¶9      Amanda's attorney filed a motion to vacate the circuit court's finding that she was in default. The effect of the motion, if granted, would be that the circuit court would vacate its determinations that Amanda had defaulted and that there were grounds to terminate her parental rights, and it would then schedule a new trial on the grounds phase at which Amanda would be allowed to participate.

¶10     Amanda's attorney attended the hearing that had been scheduled to address the motion, but Amanda did not appear at the hearing. Her attorney had no explanation for her absence. The social worker, Varela, represented that she just received a text from Amanda, who indicated that she had not known about the hearing and could not leave work. The guardian ad litem and the County's attorney urged the court to deny the motion to vacate. They argued that Amanda's excuse for not attending the hearing was a repeat of her excuse for missing the initial hearing, and that Amanda's actions demonstrated her failure to prioritize her children. The court dismissed the motion, but it did so without prejudice, giving Amanda's attorney two weeks to file a renewed motion.

¶11     At a scheduled hearing on the renewed motion, Amanda's attorney informed the circuit court about a potential settlement, which would involve Amanda withdrawing her motion to vacate and voluntarily terminating her parental rights. The court adjourned the hearing so that the parties could finalize the settlement; however, at the adjourned hearing, Amanda reversed course. She indicated that she did not intend to voluntarily terminate her parental rights, and that she wished to renew the motion to vacate the court's finding that she was in default. Amanda's attorney asked for a continuance, and the court scheduled another evidentiary hearing to address the renewed motion to vacate.

¶12    The evidentiary hearing on Amanda's motion was eventually held on April 9, 2021, and I discuss the evidence presented at that hearing in detail below. Through counsel, Amanda argued that the default finding could be sustained only if the circuit court found that her failure to appear was "egregious" or done in "bad faith." The court disagreed that the egregiousness standard applied. It instead analyzed the motion under WIS. STAT. §§ 48.46(2) and 806.07(1)(a) (providing standards for obtaining relief from a previously entered order) and ***Chester B. v. Larry D.***, Nos. 2011AP925 and 2011AP926, unpublished slip op. (WI App Nov. 2, 2011) (applying the standards from §§ 48.46(2) and 806.07(1)(a) in a procedurally similar case involving a motion to vacate a default finding on the grounds phase of a TPR proceeding, which had been entered following the father's failure to appear at the initial hearing).[9] The court determined that Amanda had not met her burden under the standards set forth in §§ 48.46(2) and 806.07(1)(a) and ***Chester B.***, and the court denied the motion on that basis.[10]

¶13    At Amanda's request, the circuit court held a contested dispositional hearing regarding both children. At the close of the hearing, the court determined

---

[9] ***Chester B.***, 2011AP925 and 2011AP926, which is sometimes referred to in the record and appellate briefing as ***In re Jordan P.B.***, is an authored one-judge opinion. The circuit court cited it for its persuasive value consistent with WIS. STAT. § 809.23(3).

When originally issued, this opinion cited two authored, unpublished, one-judge opinions that were issued in 2008. My citation of these opinions was contrary to WIS. STAT. § 809.23(3)(a) and (b), which permits citation of such authorities only if they were issued after July 1, 2009. I acknowledge my error and have issued an errata to correct it.

[10] Following that determination, the court held a jury trial on whether there were grounds to terminate A.P.'s father's parental rights, and based on the jury's verdict, the court found A.P.'s father to be unfit. The court did not need to find Amanda unfit to parent either of her children because it had already made that finding during the initial hearing, after it found that Amanda was in default.

that it would be in their best interest to terminate Amanda's parental rights to both children, and it entered final orders to that effect. Amanda appeals.

## DISCUSSION

¶14     Amanda challenges the circuit court's finding that she was in default and its subsequent denial of her motion to vacate that finding. I review both decisions for an erroneous exercise of discretion. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶18, 246 Wis. 2d 1, 629 N.W.2d 768 (default); *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977) (motion to vacate). "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶15     Amanda contends that the circuit court should not have determined that she was in default without first making a finding of egregiousness. In the alternative, she contends that, even if the court properly found her in default, the court erroneously exercised its discretion when it denied her motion to vacate that finding. I address these arguments in turn.

## I

¶16     Amanda argues that the circuit court was required to find egregiousness or bad faith as a prerequisite for finding her in default as a result of her failure to appear at the initial hearing. That same argument was advanced under similar circumstances in *Chester B.*, Nos. 2011AP925 and 2011AP926, and I reject Amanda's argument for the same reasons that it was rejected in that case.

¶17 As *Chester B.* explains, "there is a distinct difference between a failure to appear (either in person or by an attorney) *in response to a summons* as opposed to a failure to appear in person *in contravention of a specific court order once the proceedings have begun*." *Chester B.*, Nos. 2011AP925 and 2011AP926, ¶10 (emphasis added). The former situation—failing to appear in response to a summons—occurs when a litigant decides, "for whatever reason, not to show up to contest a cause of action." *Id.* If a parent fails to appear at the initial hearing, the court may treat the matter as uncontested, and the situation is governed by WIS. STAT. § 48.422(3). Section 48.422(3) provides: "If the petition is not contested the court shall hear testimony in support of the allegations in the petition[.]" No finding of egregiousness or bad faith is required. *Chester B.*, Nos. 2011AP925 and 2011AP926, ¶10.

¶18 By contrast, *Chester B.* explains that, when a litigant fails to appear in person in contravention of a specific court order requiring a personal appearance after the proceedings have begun, a default finding is considered a sanction that punishes the litigant for failing to obey a court order. Under those circumstances, a finding of egregiousness or bad faith is required. *See id.*, ¶10 (citing *State v. Shirley E.*, 2006 WI 129, ¶13 n.3, 298 Wis. 2d 1, 724 N.W.2d 623).

¶19 In this case, the circuit court did not make any finding of egregiousness or bad faith before determining that Amanda was in default. As noted above, the court later explained that no such finding was required because Amanda had failed to appear in response to the summonses.

¶20 On appeal, Amanda's argument focuses on the form of the summonses at issue in this case. Specifically, Amanda notes that the summonses

9

were signed by the circuit court judge, rather than by an attorney. She acknowledges that, had the summonses been signed by an attorney, the circuit court could have properly treated her failure to appear at the initial hearing as an uncontested matter under WIS. STAT. § 48.422(3). Here, however, she asserts that "the nature of" the summonses were "changed" to orders because both summonses were signed by the circuit court judge. Therefore, Amanda reasons, her failure to appear in response to the summons should not be treated as a failure to appear when summoned, and instead should be treated as a failure to obey a court order. According to Amanda, it follows that WIS. STAT. § 805.03 applies and a finding of egregiousness or bad faith was required.

¶21    I reject this argument for two reasons. First, it does not appear that Amanda advanced this particular argument during the circuit court proceedings. To be sure, Amanda argued that the circuit court was required to consider whether her failure to attend the initial hearing was egregious or in bad faith. Yet, she does not identify any occasion during the circuit court proceedings in which she tied that argument to the form of the summonses and the fact that they were signed by the circuit court judge.

¶22    As a general rule, when a party fails to raise an issue before the circuit court, the party forfeits that issue on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177. Although forfeiture "is a rule of judicial administration" and courts have discretion to overlook a party's failure to raise an issue in the circuit court, *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702, there are good reasons to apply the rule in most cases. Among other things, the forfeiture rule "enable[s] the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v.*

*Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnotes omitted). The rule also gives the parties and circuit court "notice of the issue and a fair opportunity to address the objection," "encourages attorneys to diligently prepare for and conduct trials," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." ***Id.*** For all these reasons, it is appropriate to consider Amanda's argument about the form of the summonses forfeited.

¶23 Second, even if I were to overlook the forfeiture, Amanda does not develop any persuasive argument to explain why the circuit court judge's signature on each of the summonses transformed it into something other than a summons to which WIS. STAT. § 48.422(3) applies. Amanda states that "the parent's rights are paramount" during the grounds phase of a TPR proceeding, which "require[s] heightened legal safeguards to prevent erroneous decisions." Yet, that principle applies equally whether a summons at issue was signed by an attorney, a judge, or no one at all. A summons is a summons, whether signed by an attorney or a judge, and Amanda's argument elevates form over function without providing any principled reason for doing so. I conclude that, during the initial hearing and then later during the hearing on the motion to vacate, the court properly treated her failure to appear at the initial hearing in person or by counsel under the standards set forth in § 48.422(3) and ***Chester B.***

## II

¶24 I now turn to Amanda's alternative argument that, even if egregiousness or bad faith was not required to find her in default during the grounds phase, the circuit court erroneously exercised its discretion when it denied her motion to vacate that default finding.

¶25  As provided in WIS. STAT. § 48.46(2), "[a] parent who … did not contest the petition initiating the proceeding in which … her parental rights were terminated may move the court for relief from the judgment on any of the grounds specified in [WIS. STAT. §] 806.07(1)(a), (b), (c), (d), or (f)."[11]  Here, the potentially applicable grounds are found in subsec. (1)(a), which allows relief if a judgment or order was entered based on "[m]istake" or "excusable neglect."

¶26  This court has had occasion to apply this standard in *Chester B.*, Nos. 2011AP925 and 2011AP926, which also involved a finding that a parent had defaulted on the grounds phase of a TPR proceeding.  In that case, the father, who was incarcerated in another state, received a summons notifying him of the initial hearing in a matter to terminate his parental rights.  *Id.*, ¶2.  The father made multiple attempts to make arrangements to secure counsel and contest the petition.  *Id.*, ¶¶3-4.  Specifically, he contacted his case worker the very next day, and his case worker helped him find the address and phone number of the state public defender's office (SPD).  *Id.*, ¶3.  The father wrote a letter to the SPD.  *Id.*  He also placed a call to opposing counsel and informed him that he wanted an attorney to represent him.  *Id.*  Opposing counsel contacted the SPD on the father's behalf, but the SPD did not attempt to contact the father and instead waited for the father to directly contact the SPD.  *Id.*, ¶¶3-4.  The father attempted to place a collect call to the SPD, but the SPD did not accept the collect call.  *Id.*, ¶4.  He could not write to the court because he did not have money to purchase a stamp or an envelope.  *Id.*  The circuit court found the father in default for failing

---

[11]  WISCONSIN STAT. § 48.46(2) appears to contemplate that such motions will generally be made after a final order is entered terminating the parent's rights.  The parties do not argue that it was improper for the court to consider Amanda's motion to vacate prior to entering final written orders terminating Amanda's rights.

12

to appear at the initial hearing and terminated his parental rights. *Id.*, ¶5. It later characterized the events leading up to his failure to appear as "an instance of the perfect storm," *id.*, ¶1, but it denied the father's motion to vacate the default finding on the grounds that the father could have sought further help from his caseworker to make contact with the SPD prior to the hearing, *id.*, ¶7.

¶27 On appeal, this court reversed the circuit court's order denying the father's motion to vacate. *Id.*, ¶1. In so doing, the court explained that, although the father might not be able to meet his burden to establish excusable neglect as that standard has been applied in ordinary civil cases, he had taken actions showing that he "honestly wanted and diligently sought the opportunity to participate in the proceedings." *Id.*, ¶14. As the court further explained, the father's "desire to participate has been shown," and his failure to appear was "due to a 'perfect storm' of facts." *Id.* Based on the "the facts specific to this case," *id.*, ¶1, the father had satisfied his burden under WIS. STAT. §§ 48.46(2) and 806.07(1)(a), *id.*, ¶14.

¶28 Here, in contrast to the facts in *Chester B.*, the circuit court found that Amanda, who had fifteen days' notice of the initial hearing, "literally did nothing" prior to the hearing to prepare to contest the petition. Therefore, the court implicitly determined that Amanda's default could not properly be characterized as the product of mistake or excusable neglect.

¶29 The circuit court's finding that Amanda "did nothing" is supported by the testimony introduced at the motion hearing. The primary witnesses at that hearing were Varela and Amanda, and the circuit court found both witnesses to be credible. I now summarize their testimony.

13

¶30 Varela testified that she was the children's case manager and had been working with Amanda since November 2016. Varela spoke with Amanda about various issues having to do with the children on July 21, July 22, and July 27, 2020. During those conversations, Varela did not recall specifically discussing the upcoming initial hearing scheduled for July 28, 2020, and Amanda did not mention any kind of confusion about the TPR proceedings or the date of the initial hearing. Varela texted Amanda when she failed to appear at the initial hearing, and Amanda stated that she had "forgotten [about] the court hearing" and would not be able to attend due to work.

¶31 Amanda testified as follows. She worked as a customer service representative with a set schedule and had to request time off in advance. She timely received the summons for the initial hearing scheduled for July 28, 2020, but she found the court documents "overwhelming" and "may not have read every single line."

¶32 When asked about the efforts she had taken to make herself available for the hearing, she testified that she "actually thought that the [initial] hearing was in August." Amanda explained that her anxiety and depression can affect her ability to take in information and to express opinions, and that, although she "wouldn't use that as an excuse," she does "sometimes get [] [her] dates mixed up," especially during an episode of anxiety. She acknowledged that she "probably" spoke with Varela several times between the service of the summonses and the July initial hearing, and that she had not taken any steps to verify the date of the hearing with Varela or anyone else.

¶33 Amanda acknowledged that Varela had texted her in the "midst of the hearing," but at that time, Amanda was at work and "was not able to get off."

14

She also acknowledged that, when Varela texted her that a default finding had been entered, she responded: "I don't care. I don't give a [expletive] anymore. You can just keep my kids." However, it had "absolutely not" been her intent to allow a default finding to occur. According to Amanda, her text message to Varela was made out of "frustration" but not "bad faith." Amanda recognized her history of missing court dates,[12] but stated that she had recently been working to confirm that she had correct scheduling information and to make arrangements to attend court proceedings, and she asked the court to take that into consideration when issuing a decision on the motion.

¶34 On appeal, Amanda tacitly acknowledges that her situation is not like *Chester B.*, and that the circuit court's finding that she "did nothing" to prepare to contest the petition is not clearly erroneous. However, she contends that there was no need for her to do anything to prepare because she was unaware that the hearing was scheduled for July and thought it was instead scheduled for the following month. In other words, Amanda contends that the court was compelled to excuse her failure to do anything under those facts. Amanda cites no authority to support this position, and I reject it on at least that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (providing that an appellate court need not consider arguments that are unsupported by adequate legal citations or are otherwise undeveloped). I conclude that the circuit court did not erroneously exercise its discretion when it denied Amanda's motion to vacate its finding that she was in default.

---

[12] Amanda and Varela also testified about Amanda's failure to appear at the original hearing scheduled to address her motion to vacate the default finding, but I do not recount that testimony because it is not directly pertinent to any issue on appeal.

15

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.