**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 13, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP37**

Cir. Ct. No. **2021TP18**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N. B.,
A PERSON UNDER THE AGE OF 18:

BARRON COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

Q. B.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed.*

¶1 STARK, P.J.[1] Quan[2] appeals an order terminating his parental rights (TPR) to Nate. Quan argues that the circuit court erroneously exercised its discretion by denying his request for a cautionary instruction after admitting other-acts evidence during the grounds phase of his TPR jury trial. Quan contends that the admission of the other-acts evidence without a cautionary instruction warrants a new trial.

¶2 We assume without deciding that the circuit court erroneously exercised its discretion by failing to give Quan's requested cautionary instruction, but we conclude that the error was harmless. Accordingly, we affirm.

## BACKGROUND

¶3 In January 2021, a dispositional order was entered in a child in need of protection or services (CHIPS) case based upon the circuit court's finding that three-year-old Nate was at risk of neglect pursuant to WIS. STAT. § 48.13(10) and (10m). Nate was immediately removed from the care of his parents, Jill and Quan, due to concerns regarding their drug use in their home. Nate has not returned to either parent's care since his initial removal.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply." RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we refer to the appellant, the mother, and the child in this confidential matter using pseudonyms, rather than their initials.

2

¶4      In November 2021, the County filed a petition to terminate Quan's parental rights to Nate on the grounds of continuing CHIPS and failure to assume parental responsibility.[3]   The petition alleged that Quan exposed Nate to a hazardous living environment due to his admitted methamphetamine use in the home and him leaving Nate in the care of an older child in the home for lengthy periods of time.   The petition set forth the following conditions from the underlying CHIPS case that Quan was required to complete prior to reunification with Nate:  undergo individual counseling; meet with a psychiatrist; participate in alcohol and other drug abuse (AODA) treatment; refrain from use of alcohol and illegal drugs; complete drug tests; maintain safe and adequate housing; and maintain regular contact and visitation with Nate.

¶5      Prior to trial, Quan and Jill both filed motions in limine asking the circuit court to exclude "evidence of other alleged crimes, wrongs, or acts by [Quan]."  The court granted both motions.  The court noted that it understood "the parents' concern about not being labeled or stereotyped or stigmatized as law breakers or criminals" "because that can be hugely prejudicial to a jury."

¶6      In August 2022, a two-day jury trial was held during which ten witnesses testified.  Amanda DeLawyer, the current social worker for the family, testified that Quan and Jill had completed supervised visits since Nate's removal. She testified that Quan made a psychiatrist appointment in June 2021, but he never shared with her any other psychiatric records.  DeLawyer stated that on more than one occasion, Quan removed his sweat patch used for drug testing without the

---

[3] The County also petitioned to terminate the parental rights of Nate's biological mother, Jill.  Her rights are not implicated in this appeal.

County's approval. She also stated that Quan had a number of housing issues, including being evicted, being removed from a shelter twice due to his methamphetamine use, and periods of homelessness. DeLawyer further testified that she had monthly team meetings with Quan and his service providers.

¶7 Danielle Neurer, another social worker, testified to providing transportation assistance and supervising weekly visits between Quan and Nate. She also testified to administering sweat patch drug tests to Quan.

¶8 Ronald Lessard, a substance abuse counselor employed by the County, testified that Quan admitted to using methamphetamine and marijuana during the pendency of the CHIPS action. Lessard stated that testing revealed Quan had continuously used drugs since Nate's removal from Quan's care. Lessard testified that Quan was terminated from intensive AODA programming in August 2021 because he was noncompliant, stopped attending group sessions as scheduled, and continued to use both methamphetamine and THC. However, Lessard also testified that Quan went through periods during treatment where there was "some really significant change," and he mentioned how Quan "talked about being honest as really something to avoid continuous use." Lessard referred to this discussion as "a real breakthrough" and "insightful."

¶9 During Lessard's cross-examination, Quan's lawyer asked Lessard if he could speak about periods of sobriety during Quan's life. In response, Lessard stated, "I know that he has spent quite a bit of time incarcerated over the years." At the conclusion of Lessard's testimony, Quan's lawyer asked the circuit court about providing a cautionary instruction to the jurors as to Lessard's testimony regarding Quan's prior incarceration.

¶10 The circuit court noted that Lessard's comment about Quan's incarceration was brought out during his cross-examination by Quan's lawyer and that "it wasn't something that was extensive," nor did counsel object to or move to strike it. The court recalled that Lessard made "some reference generally that part of [Quan's] periods of sobriety were because it was forced in nature because he was confined and not able to use. Not necessarily a product of him being sober and maintaining sobriety out in the public when he's left to his own devices." The court determined that fashioning an instruction to address the testimony would draw "more attention to it." The court therefore denied Quan's request for a cautionary instruction. However, the court gave Quan's lawyer the opportunity to review Lessard's testimony with the court reporter, and if the testimony was significant in terms of the reason that Quan was in prison or the amount of time he was there, the court stated that it would reconsider the issue. Quan did not raise the issue again.

¶11 The jury returned a verdict finding that the County had established both the continuing CHIPS and the failure to assume parental responsibility grounds. The circuit court subsequently found Quan unfit as required by law. After an October 2022 dispositional hearing, the court found that it was in Nate's best interest to terminate Quan's parental rights. Quan now appeals.

## DISCUSSION

¶12 Termination of parental rights proceedings involve a two-step process: grounds and disposition. *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶11, 299 Wis. 2d 637, 728 N.W.2d 652. The first step involves a fact-finding hearing "to determine whether grounds exist for the termination of parental rights." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333

Wis. 2d 273, 797 N.W.2d 854 (citing WIS. STAT. § 48.424(1)). If grounds exist for the termination of parental rights, the second step in the process is for the circuit court to hold a dispositional hearing, at which the focus is on the best interests of the child. *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶¶28, 38, 255 Wis. 2d 170, 648 N.W.2d 402.

¶13 Quan's arguments center on the first step in the TPR process: whether grounds existed to terminate his parental rights to Nate. He argues that he is entitled to a new trial because the circuit court erroneously exercised its discretion by denying his request for a cautionary jury instruction when other-acts evidence and damaging character evidence were introduced through Lessard's testimony.

¶14 "A court has broad discretion in deciding whether to give a particular jury instruction." *State v. Hubbard*, 2008 WI 92, ¶23, 313 Wis. 2d 1, 752 N.W.2d 839. "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted). An error related to refusing to give a jury instruction is not prejudicial "if it appears that the result would not be different had the error not occurred." *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶11, 356 Wis. 2d 1, 850 N.W.2d 160 (citation omitted).

¶15 Both parties agree that Lessard's testimony referencing Quan's prior incarceration constituted other-acts evidence. *See* WIS. STAT. § 904.04(2) (stating that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

therewith"). We therefore assume without deciding that the testimony constituted other-acts evidence.

¶16 Quan argues that the other-acts evidence was unfairly prejudicial. In response, the County requests that we conduct a *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) (holding that the probative value of the other-acts evidence must not be substantially outweighed by the danger of unfair prejudice) analysis as to the evidence's admissibility. However, we conclude that Quan forfeited his objection to the admission of the other-acts evidence, and what he also refers to as character evidence, because he did not object to the evidence or move to strike it during the trial. *See State v. Marinez*, 2011 WI 12, ¶49, 331 Wis. 2d 568, 797 N.W.2d 399 (ruling that an individual must object at the time of alleged errors or forfeit the right to review on appeal).

¶17 Quan nevertheless argues that he made a timely request for a cautionary instruction regarding the other-acts evidence. He contends that WIS. STAT. § 901.06 requires that the circuit court provide a cautionary instruction to the jury, when requested, if evidence has been admitted for a limited purpose. That statute provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Sec. 901.06.

¶18 Here, the circuit court recalled that when asked about Quan's history of sobriety, Lessard made "some reference generally that part of [Quan's] periods of sobriety were because it was forced in nature because he was confined and not able to use. Not necessarily a product of him being sober and maintaining sobriety out in the public when he's left to his own devices." Thus, Lessard's evidence

regarding Quan's prior periods of incarceration was admissible for the limited purpose of showing that some of Quan's periods of sobriety were not due to voluntary abstinence, but were instead forced.

¶19    Quan nevertheless, argues that the admission of the incarceration evidence violated the spirit, if not the mandate, of the circuit court order granting his motion in limine preventing the admission of evidence of other alleged crimes, wrongs, or acts by Quan.  Accordingly, Quan contends that the court was required to provide the following cautionary instruction to the jury:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant [was previously incarcerated].  If you find that this did occur, you should consider it only on the issue of….
>
> You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

*See* WIS JI—CRIMINAL 275 (2018).

¶20    For the purpose of our decision, we assume without deciding that the circuit court erroneously exercised its discretion by failing to give Quan's requested cautionary instruction.  We conclude, however, that the error was harmless.

¶21    The harmless error analysis is applicable in TPR proceedings.  *See Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768. Whether "a circuit court has committed an error in failing to give a jury instruction" is subject to the harmless error analysis, and "we must assess whether the substantial rights of the [individual] have been affected." *State v. Head*, 2002

WI 99, ¶44, 255 Wis. 2d 194, 648 N.W.2d 413; *see also* **State v. Hunt**, 2014 WI 102, ¶21, 360 Wis. 2d 576, 851 N.W.2d 434 (holding that a "circuit court's erroneous exercise of discretion in admitting evidence is subject to the harmless error rule"). Whether an error is harmless presents a question of law that we review de novo. **Hunt**, 360 Wis. 2d 576, ¶21.

¶22 An error is harmless if it is clear beyond a reasonable doubt that a rational jury would have reached the same result absent the error. *See* **State v. Tucker**, 2003 WI 12, ¶26, 259 Wis. 2d 484, 657 N.W.2d 374. "The goal of the harmless error rule is to 'inject reasoned judgment … into appellate review' to ensure retrials occur only when the error actually affected the original trial." **State v. Monahan**, 2018 WI 80, ¶34, 383 Wis. 2d 100, 913 N.W.2d 894 (citations omitted). The error in question must affect a party's substantial rights.

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the *substantial rights* of the party seeking to reverse or set aside the judgment, or to secure a new trial.

WIS. STAT. § 805.18(2) (emphasis added). "For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." **Evelyn C.R.**, 246 Wis. 2d 1, ¶28.

¶23 We conclude that any error on the part of the circuit court by failing to provide a cautionary instruction to the jury did not affect Quan's substantial rights or the outcome of the trial. *See* **id.** As the County notes, it is virtually

undisputed that the County proved the continuing CHIPS ground.[4]  The continuing CHIPS ground requires the petitioner to prove:

> 1. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders ….
>
> 2.
>
>  ….
>
> b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.
>
> 3. That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time spent outside the home as an unborn child; that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

WIS. STAT. § 48.415(2)(a).  For purposes of the continuing CHIPS ground, "reasonable effort" means "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court," taking into consideration the

---

[4] The County argues that it proved the ground of failure to assume parental responsibility as well.  We decline to address this issue because the County proved the continuing CHIPS ground, and only one ground is required for a TPR.  *See Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856 (stating that petitioner must prove that one or more of the statutory grounds for a TPR exist); *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (holding an appellate court need not address every issue raised by the parties when one issue is dispositive).

characteristics of the parent or child, the parent's level of cooperation, and other relevant circumstances of the case. Sec. 48.415(2)(a)2.a.

¶24 The circuit court answered the verdict question regarding the first element of the continuing CHIPS ground as a matter of law, as it was undisputed that, at the time of trial, Nate had been removed from Quan's home for over eleven months. As to the second element, the County presented evidence regarding the reasonable efforts that it provided to reunite Nate with Quan. Neurer testified that she provided transportation assistance, visitation assistance, and administered Quan's drug testing. DeLawyer testified that she had monthly meetings with Quan and his service providers. Lessard testified as to efforts to provide Quan with treatment. There is no reasonable probability that the jury's answer to the verdict question regarding the County's reasonable efforts was affected by testimony regarding Quan's prior incarceration, as it was clear from Lessard's testimony that Quan's periods of incarceration occurred prior to entry of the CHIPS order.

¶25 For the third element, the County proved that Nate had been placed outside of the home for more than six months, and the evidence supports the jury's finding that Quan failed to meet the conditions established in the CHIPS order for Nate's return. Lessard testified that Quan failed to complete the AODA treatment program required under his CHIPS order. Quan was expected to comply with drug testing, yet DeLawyer testified as to Quan's unapproved removal of the sweat patches used for drug testing. Quan was required to refrain from the use of illegal drugs, yet Lessard testified not only that Quan had admitted to methamphetamine use, but also that Quan's drug use was continuous based on the results of his drug testing after Nate's removal. And, although Quan was also expected to maintain safe and adequate housing, DeLawyer testified that Quan

faced numerous issues with his housing, such as being evicted, being removed from a shelter twice due to his methamphetamine use, and periods of homelessness. Based on this evidence, the jury could reasonably conclude that Quan failed to meet the conditions required for Nate's return. Quan does not argue otherwise. Evidence about Quan's incarceration predating the CHIPS order would not have affected the jury's finding in this regard.

¶26 Quan argues there is a risk that, after "learning that a parent had been incarcerated 'quite a bit' over the course of his life," a jury "would tend to conclude that the parent was not fit to parent regardless of the issues in the case." Quan further argues that, absent a cautionary instruction, the testimony about his incarceration "was allowed to resonate wholly unfettered in the jurors' consciousness." However, as noted, the evidence supporting the termination of Quan's parental rights under the continuing CHIPS ground was virtually undisputed. We agree with the circuit court that Lessard's brief testimony about Quan's incarceration prior to the entry of the CHIPS order "wasn't something that was extensive." There is no question that the jury would have reached the same result absent Lessard's incarceration testimony and, thus, that testimony did not affect Quan's substantial rights. We therefore conclude that any error by failing to provide a cautionary instruction to the jury regarding the other-acts evidence was harmless, as it did not affect the outcome of the trial.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.