COURT OF APPEALS
DECISION
DATED AND FILED

July 18, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1713**

Cir. Ct. No. 2018CV7415

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

TONY B. ANDERSON,

PLAINTIFF-RESPONDENT,

COMPCARE HEALTH SERVICES INSURANCE CORPORATION,

INVOLUNTARY-PLAINTIFF,

V.

WEST BEND MUTUAL INSURANCE CORPORATION AND MARY C. SCHNABEL,

DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Milwaukee County: KEVIN E. MARTENS, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  West Bend Mutual Insurance Corporation and Mary C. Schnabel (collectively, "Schnabel") appeal a circuit court order entering judgment in favor of Tony B. Anderson in the amount of $463,685.76.  Schnabel argues that the circuit court erred in determining that there was a proper foundation for expert testimony regarding whether Anderson's injuries were caused by Schnabel, and that the circuit court's factual findings and damages awards were therefore unsupported by admissible evidence.  Schnabel also argues that the circuit court erred when determining its damages awards for Anderson's past and future pain and suffering.  We reject Schnabel's arguments and affirm the judgment.

## BACKGROUND

¶2    This case arises from an automobile accident that occurred on October 30, 2016, when Schnabel's vehicle deviated from its lane of traffic and sideswiped Anderson's vehicle.  Schnabel stipulated that she was 100 percent negligent in causing the accident.

¶3    The circuit court held a bench trial on damages and then issued its findings of facts and conclusions of law.  The court found that "Anderson credibly testified that his right elbow 'jammed' into the center console armrest at the time of impact as he used his left hand to jerk the steering wheel left to maintain control of the direction of his vehicle at the time of impact."  Shortly after the accident, Anderson began to feel pain in his right shoulder and sought treatment.  An initial MRI showed multiple tears in Anderson's right rotator cuff and degenerative joint

disease in his right shoulder. A second MRI showed a narrowing of the space where the rotator cuff is located along with tearing and tissue damage.

¶4 Anderson underwent physical therapy, but continued to experience pain, weakness, and stiffness. Anderson's physical therapist recommended an orthopedic consultation. Because Anderson was not making progress with non-surgical options, Anderson eventually underwent arthroscopic surgery. Although Anderson's condition and range of motion improved after surgery, Anderson continued to experience constant pain in his shoulder. Anderson was subsequently diagnosed with adhesive capsulitis, which is a known complication from Anderson's surgery. Anderson then underwent a surgical procedure under general anesthesia that was intended to break up the scar tissue in his shoulder. Although this second procedure resulted in some improvement, Anderson still experienced pain and limitations in his range of motion. As of the time of trial, Anderson was still experiencing significant pain that will require additional surgery.

¶5 The circuit court found that Anderson's physical injuries of "rotator cuff tearing, compressed space for the rotator cuff and arthritis at the top of the shoulder joint were not caused by the October 30, 2016 accident but, instead, were likely the result of degenerative wear and tear that occurred prior to that date." Nonetheless, the court found that the accident "was a 'triggering event' that caused his pain to begin and necessitated" the medical interventions. Based on these factual findings, the court awarded Anderson damages for past medical expenses, past lost wages, past pain, suffering, and disability, future health care expenses, future lost wages, and future pain, suffering, and disability.

¶6 Schnabel filed a post-judgment motion to amend the findings of fact and conclusions of law, or in the alternative for a new trial or remittitur. The

circuit court denied the motion after a hearing. The circuit court then entered final judgment in favor of Anderson in the amount of $463,685.76. Schnabel now appeals.

## DISCUSSION

¶7      Schnabel argues that several of the circuit court's findings of fact are clearly erroneous because "they are based on evidence that does not meet the reliability standards set forth in WIS. STAT. § 907.02." Schnabel's arguments focus on the testimony of Anderson's treating orthopedic surgeon, Dr. James Neubauer. Schnabel argues that Dr. Neubauer's testimony was inadmissible to establish causation, and that without this expert testimony there was insufficient evidence to support the damages awarded. Schnabel also argues that the circuit court erred when determining its damages awards for Anderson's past and future pain and suffering. We address each argument in turn, noting that there is substantial overlap between these arguments.

### I.      *Expert Testimony Regarding Causation*

¶8      Schnabel's first argument is that the circuit court erred in admitting Dr. Neubauer's opinion regarding the causal nexus between the accident and Anderson's claimed damages. In particular, Schnabel contends that because Dr. Neubauer's opinion relied on Anderson's own report regarding his shoulder pain, Dr. Neubauer's testimony did not satisfy the ***Daubert*** standard as set forth in WIS. STAT. § 907.02(1).[1]

---

[1] This statute provides as follows:

(continued)

¶9      We "decide[] whether the circuit court applied the proper legal standard under WIS. STAT. § 907.02(1) … independently of the circuit court … but benefiting from [its] analyses." ***Seifert v. Balink***, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816.   "Once satisfied that the circuit court applied the appropriate legal framework, an appellate court reviews whether the circuit court properly exercised its discretion in determining which factors should be considered in assessing reliability, and in applying the reliability standard to determine whether to admit or exclude evidence" under § 907.02(1)." ***Id.***, ¶90 (footnote omitted).   "[A] circuit court has discretion in determining the reliability of the expert's principles, methods, and the application of the principles and methods to the facts of the case." ***Id.***, ¶92.   The circuit court erroneously exercises this discretion "when a decision [to admit expert testimony] rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact." ***Id.***, ¶93.

¶10     Schnabel argues that the circuit court erred in concluding that there was proper foundation for Dr. Neubauer to give expert testimony regarding causation.   Schnabel made this objection during trial, after Dr. Neubauer explained the mechanics of how the accident could have affected Anderson's rotator cuff.

---

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

WIS. STAT. § 907.02(1) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

When Dr. Neubauer was asked whether a minimal amount of impact or movement could have caused Anderson's asymptomatic rotator cuff disease to become symptomatic, Schnabel objected on the ground that Dr. Neubauer's testimony on this issue lacked foundation. The circuit court sustained the objection and asked Anderson to lay additional foundation regarding Dr. Neubauer's "experience in dealing with these types of injuries or referrals."

¶11    Dr. Neubauer testified that he had been treating rotator cuff injuries since 2008, including dozens of rotator cuff injuries arising from automobile accidents. In the course of this experience, Dr. Neubauer "had seen asymptomatic rotator cuff tears become symptomatic with multiple different levels of energy, both high and low." For example, Dr. Neubauer had treated patients whose rotator cuff injuries became symptomatic as a result of reaching activities (such as reaching for a lab coat in a locker), throwing activities, and catching oneself on a stair railing to prevent a slip and fall.

¶12    Anderson then asked whether these pain-producing activities "mimic the type of movement that you would expect to see in somebody who is side-swiped in a motor vehicle accident." Schnabel again objected and requested voir dire. During voir dire, Dr. Neubauer testified that his examples were all based on patient history, as provided by each patient, and that he had never analyzed "the amount of forces that they would [have] encountered, or in any other way determin[ed] the G-forces necessary to cause the kind of injury that they complained about[.]" The circuit court then overruled Schnabel's objection based on its "understanding … that in the field that the witness is in, that they rely on history as a matter of course for purposes of treatment." The court explained that Dr. Neubauer's reliance on patient history went to weight and not admissibility.

¶13 Dr. Neubauer proceeded to testify that, in his experience, asymptomatic shoulder injuries can become symptomatic with low-energy incidents, even in the absence of trauma. Dr. Neubauer also testified that he did not have any doubt that the accident caused Anderson's rotator cuff disease to go from asymptomatic to symptomatic.

¶14 Schnabel argues that this testimony lacked proper foundation under WIS. STAT. § 907.02(1) and therefore should have been excluded. In *Seifert*, our supreme court addressed how to evaluate the reliability of medical testimony under § 907.02(1). *Seifert*, 372 Wis. 2d 525, ¶7. The court explained that "courts frequently admit experience-based testimony, especially when expert medical evidence is offered." *Id.*, ¶77. Accordingly, "[e]xpert medical opinion based on experience alone, or experience in conjunction with other knowledge, skill, training or education may constitute a reliable basis." *Id.* (citation omitted).

¶15 In the present case, Dr. Neubauer's testimony drew on more than twelve years of experience as a board-certified orthopedic surgeon treating patients with rotator cuff injuries, including dozens of rotator cuff injuries caused by automobile accidents, as well as cases involving asymptomatic rotator cuff injuries that suddenly became symptomatic as a result of low-energy events. Based on *Seifert*, we see no basis for questioning whether the circuit court properly exercised its discretion in determining that Dr. Neubauer's experience, knowledge, skill, training, and education qualified him to provide expert testimony regarding the cause of Anderson's shoulder pain.

¶16 Schnabel nonetheless argues that *Seifert* is not good authority for admitting Dr. Neubauer's opinion regarding the causal link between the accident and Anderson's shoulder pain. In particular, Schnabel argues that Dr. Neubauer's

opinion was based primarily on Anderson's self-report that he had no shoulder problems before the accident but had problems afterwards. Accordingly, Schnabel contends that Dr. Neubauer's opinion reflects the logical fallacy known as *post hoc ergo propter hoc*, or "assuming that a causal relationship exists when acts or events are merely sequential." Schnabel further contends that "temporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation."

¶17     We disagree with Schnabel's characterization of Dr. Neubauer's opinion as based on temporal proximity and nothing else. Dr. Neubauer provided detailed testimony about the mechanics of how Anderson's jammed elbow could have caused the asymptomatic rotator cuff disease to become symptomatic, and also testified about how this explanation for Anderson's pain fits with other cases he has observed in his practice that were caused by low-energy events. This testimony regarding the causal link between the accident and Anderson's shoulder pain was based on Dr. Neubauer's experience, knowledge, skill, training, and education, and is therefore sufficient under *Seifert*.

¶18     Schnabel also argues that *Seifert* is distinguishable because that case involved medical testimony about the standard of care, specifically "whether warning factors should have required a family physician to take precautions to avoid using" a particular method for delivering a baby. In contrast, Dr. Neubauer's opinion addressed causation, and Dr. Neubauer "is not shown to have any expertise in determining the etiology of a condition." We disagree that the holding of *Seifert* is as narrow as Schnabel suggests. To the contrary, in holding that medical experts may give testimony based on their experience, our supreme court distinguished medical science from "more objective sciences" by explaining that "[i]n medicine, knowledge is often uncertain, the human body is

complex, and etiology is often uncertain." *Id.*, ¶¶79-80 (citation and bracket omitted). Thus, the court explicitly embraced etiology when holding that experience-based testimony may be sufficiently reliable to qualify a medical professional as an expert under WIS. STAT. § 907.02(1).

¶19 Schnabel's last argument regarding causation is that Dr. Neubauer's testimony is "a form of *ipse dixit*," which means that an expert is attempting to "establish that a fact is generally accepted merely by saying so." *Id.*, ¶75. In *Seifert*, our supreme court explained that circuit courts do not need "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* (citation omitted). Examples of testimony that is excludible as *ipse dixit* include expert testimony from a witness whose "experience was not extensive enough to indicate reliability for testimony based on personal experience" or whose "'sample size' (himself alone) is too small." *Id.*, ¶76. Schnabel contends that "[t]here is a huge difference" between the expert testimony offered in *Seifert* and the testimony offered by Dr. Neubauer, but does not develop any argument that Dr. Neubauer's experience with rotator cuff injuries was not sufficiently extensive, or that his sample size was too small.

¶20 Moreover, the facts do not support Schnabel's suggestion that Dr. Neubauer's experience compares unfavorably to the expert in *Seifert*. Schnabel argues that the expert in *Seifert* testified based on "his own vast experience dealing with shoulder dystocia dozens of times." Here, Dr. Neubauer drew in part on his own experience treating dozens of rotator cuff injuries caused by automobile accidents. Schnabel does not point to anything in the record that would differentiate Dr. Neubauer's experience from the purportedly "vast experience" of the expert in *Seifert*. Thus, we see no basis for distinguishing the two witnesses' degree of experience.

¶21    Instead of pointing to facts that distinguish Dr. Neubauer from the expert in *Seifert*, Schnabel argues that, to avoid the pitfall of *ipse dixit* testimony, a witness relying on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See* Daniel D. Blinka, *The Daubert Standard in Wisconsin: A Primer*, Wis. Law., March 2011, at 14. As explained above, Dr. Neubauer did not simply state a conclusion about the cause of Anderson's pain. Instead, Dr. Neubauer explained the physical mechanism of Anderson's injury and based his opinion on his experience treating rotator cuff injuries, including injuries caused by low-energy events. We see no basis for questioning whether the circuit court properly applied *Seifert* in admitting this testimony under WIS. STAT. § 907.02(1).

## II.    *Expert Testimony Regarding Anderson's Damages*

¶22    Schnabel also argues that Anderson did not present expert testimony to support various categories of damages awarded by the circuit court, including future pain and suffering, medical expenses, and wage loss. Because Schnabel has not shown that the circuit court erroneously exercised its discretion in admitting Dr. Neubauer's expert testimony, we reject Schnabel's argument that the circuit court's damages awards were not supported by expert testimony.

¶23    Regarding the medical expenses incurred as a result of the accident, Dr. Neubauer testified that the treatments that Anderson received following the accident were medically necessary. Schnabel again argues that the circuit court should not have admitted Dr. Neubauer's testimony on these issues. Schnabel's damages arguments mostly rehash the arguments regarding causation that we have already rejected above. We need not repeat that discussion here.

¶24     The only new argument we see from Schnabel in this regard is that Dr. Neubauer failed to conduct a differential diagnosis, so that "his opinion in this case was a hypothesis, the proof of which remains to be made." *See Porter v. Whitehall Labs, Inc.*, 9 F.3d 607, 615 (7th Cir. 1993). The excluded testimony regarding causation in *Porter* was qualitatively different from Dr. Neubauer's testimony in this case. In particular, a key witness in *Porter* admitted that his testimony was a "hypothesis, the proof of which remains to be made" and that, "if his personal hypothesis turned out to be correct, it would be the first case in history" to demonstrate causation under the facts of that case. *Id.* The trial court excluded this testimony, and the Seventh Circuit concluded that the trial court properly exercised its discretion in doing so. *Id.*

¶25     In contrast, Dr. Neubauer made no such admission here. Instead, Dr. Neubauer testified that Anderson's pain fit a pattern that he had seen several times before, when a patient's asymptomatic rotator cuff injury became symptomatic with a similarly low-energy event. Thus, the Seventh Circuit's decision in *Porter* is not helpful to Schnabel.

¶26     Schnabel also points to Dr. Neubauer's statement that "we really don't have a great understanding of why patients become symptomatic and how long those symptoms last," arguing that the expert's candor about the limits of medical knowledge should be a basis for excluding his testimony. This argument fails to grapple with our supreme court's view that "[m]edicine is not a science but a learned profession…. Much of medical decision-making relies on judgment and is difficult to quantify or even to assess qualitatively." *Seifert*, 372 Wis. 2d 525, ¶79. Indeed, even Schnabel's own witness, Dr. Gushue, "acknowledged … that people experience pain even though an MRI scan may not provide source indicators" and "that individuals may react differently to forces experienced in a

11

motor vehicle accident." Accordingly, we see no error in the circuit court's decision to rely in part on Dr. Neubauer's experience-based testimony in awarding damages, notwithstanding Dr. Neubauer's candor about the limits of medicine's ability to make these determinations with absolute certainty.

¶27 Schnabel also directs us to the circuit court's finding that "eventually the underlying degenerative conditions would have been the source of pain" for Anderson. Schnabel does not develop any argument regarding the significance of this finding. As Anderson points out, shoulder pain resulting from the accident is a compensable injury despite the fact that Anderson had a pre-existing condition that would have eventually resulted in shoulder pain even if the accident had not occurred. *See Anderson v. Milwaukee Ins.*, 161 Wis. 2d 766, 770, 468 N.W.2d 766 (Ct. App. 1991).

¶28 In *Anderson*, the trial court awarded the plaintiff damages for the repair of a pre-existing hernia, based on its finding "that the accident caused the hernia to become apparent." *Id.* On appeal, we rejected the defendant's arguments that the plaintiff could not be awarded damages arising from this pre-existing condition. *Id.* Instead, we concluded that the plaintiff's "damages from the accident were increased because of the pre-existing condition." *Id.* We also rejected the defendant's argument that the plaintiff's damages were "not compensable because the apparent hernia was inevitable and the treatment would be the same." *Id.* Instead, we explained that "Wisconsin law does not support the proposition that when the injuries from an accident are the same as the injuries that may inevitably occur due to a pre-existing condition, the injuries from the accident are completely uncompensable." *Id.*

12

¶29 Our decision in *Anderson* guides our analysis here, where the plaintiff's damages from the accident were increased because of his pre-existing shoulder degeneration. The circuit court's finding that Anderson would have eventually experienced shoulder pain from this pre-existing condition does not render his pain uncompensable. *Id.* Moreover, in this case, the court specifically found that there was "no evidence that the shoulder pain Anderson would likely have experienced in the future even if the motor vehicle accident [had] not occurred would have required surgical intervention." Thus, the case for damages relating to the post-accident medical treatments is stronger than in *Anderson*, where the plaintiff would have inevitably required the same hernia treatment even without the accident. We therefore see no basis here for concluding that the damages associated with Anderson's surgical interventions are not compensable, based on the circuit court's finding that the accident was the triggering event for Anderson's pain.

¶30 Regarding future pain and suffering, Schnabel argues that any award of damages for future pain and suffering must be supported by expert testimony. *See Sawdey v. Schwenk*, 2 Wis. 2d 532, 537, 87 N.W.2d 500 (1958) (citing *Diemel v. Weirich*, 264 Wis. 265, 58 N.W.2d 651 (1953)). Anderson agrees that expert testimony is required, but only "when the injuries are 'subjective in character.'" *Bach v. Liberty Mut. Fire Ins. Co.*, 36 Wis. 2d 72, 85, 152 N.W.2d 911 (1967) (quoting *Diemel*, 264 Wis. at 268). Here, Anderson argues the claimed injuries are both objective and subjective.

¶31 Regardless of whether Anderson's injuries were subjective or objective, there was expert testimony to support the circuit court's damages award for future pain and suffering. Specifically, Dr. Neubauer testified that Anderson did not yet have a functional range of motion without pain, that it was more likely

than not that Anderson would continue to have pain and decreased range of motion in the future, and that he did not anticipate that Anderson's pain would change "without other intervention." Schnabel again argues that the circuit court should have excluded these opinions as *ipse dixit*. We have already concluded that the circuit court's decision to admit Dr. Neubauer's experience-based testimony is consistent with *Seifert*. We need not repeat that analysis here.

¶32    To the extent that Schnabel is making any additional arguments regarding the sufficiency of the evidence to support the damages awarded in this case, we reject them as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Although Anderson contended that Schnabel's remaining arguments were "difficult to decipher," Anderson's responsive brief thoroughly discussed the evidence supporting various categories of damages, even without a developed argument from Schnabel. Schnabel's reply brief does little more than quote from various authorities, with no effort to connect these authorities to the facts of this case. Accordingly, we need not address these issues further. *See State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either the trial court or the opposing party will arrange them into viable and fact-supported legal theories.").

### III.    *Pain and Suffering Damages*

¶33    Schnabel's final argument is that the circuit court impermissibly considered the amount of Anderson's medical expenses when making its awards for past and future pain and suffering. At trial, Anderson testified about the pain he experienced a few hours after the accident, during physical therapy, and after his first surgery, at which point he consulted with a pain management specialist

due to the constant pain he was experiencing. As a result of the continuing pain, Anderson had to sleep in a recliner. Anderson then underwent more physical therapy as well as a second surgical procedure that somewhat improved his pain but decreased his range of motion.

¶34 Anderson further testified that the accident limited his ability to engage in his normal activities, including helping take care of his wife, playing and coaching basketball, playing with his grandchildren, and doing community service. Anderson's wife also testified about these differences that she observed in her husband's ability to engage in his pre-accident activities, as well as his irritability following the accident.

¶35 In addition, Anderson's physical therapist, Dr. William Lois, testified about Anderson's significant loss of motion in his shoulder and elbow. Dr. Lois testified that he was unable to perform all of the normal testing due to Anderson's level of pain. Dr. Lois also observed that Anderson held his arm in a guarded position, which is indicative of pain. Finally, Dr. Neubauer testified that he noted weakness and pain when initially testing Anderson's shoulder. Dr. Neubauer recommended the first surgery to address Anderson's pain and loss of shoulder function. After the surgery, Anderson developed adhesive capsulitis, which is a known complication with any shoulder surgery that causes tightness and affects the range of motion. Dr. Neubauer treated the adhesive capsulitis with injections followed by an additional surgical procedure to break up the scar tissue in Anderson's shoulder. At their last appointment before trial, Anderson was still experiencing pain, and Dr. Neubauer recommended additional procedures.

¶36 Following the bench trial, the court awarded $140,785.17 for past medical expenses, $41,573 for future health care services, $30,299.90 for past lost

wages, $3,700.80 for future lost wages, $170,000 for past pain and suffering, and $30,000 for future pain and suffering. In making its awards, the court stated that it relied on the Wisconsin Civil Jury Instructions to determine damages, including WIS JI—CIVIL 1766 (2009) and WIS JI—CIVIL 1767 (1999), which address past and future pain, suffering, and disability, respectively.

¶37    Schnabel filed a motion to amend the findings of fact and conclusions of law, or in the alternative for a new trial or remittitur, arguing that the total award of $200,000 for past and future pain and suffering was excessive. During the hearing on Schnabel's motion, the circuit court explained that pain and suffering awards "are imprecise as a matter of practice[.]" In the court's view, medical expenses were helpful for making this determination because "they bear some type of general relationship to pain and suffering awards." The court explained that "[t]ypically circumstances that involve less medical treatment usually are circumstances that involve less pain and suffering." Nonetheless, the court acknowledged that medical expenses "aren't a perfect measure certainly[.]" Accordingly, the court stated that it used the award of medical expenses "as sort of a very broad guide, but apart from that again I think that the record is adequate to support the award."

¶38    Schnabel argues that the circuit court erroneously exercised its discretion by relying on an improper legal standard. *See Dahmen v. American Family Mut. Ins. Co.*, 2001 WI App 198, ¶11, 247 Wis. 2d 541, 635 N.W.2d 1 (Ct. App. 2001). Although Schnabel agrees that "[t]he amount and type of treatment may be an issue for pain and suffering," Schnabel nonetheless argues that the actual cost of the plaintiff's treatment does "not bear any relevance to pain and suffering." Schnabel further argues that the court's consideration of the costs of Anderson's treatment was an error that affected Schnabel's substantial rights.

16

*See Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768; *State v. Dyess*, 124 Wis. 2d 525, 543, 547, 370 N.W.2d 222 (1985).

¶39     In *Dahmen*, we explained that we will not reverse a circuit court's discretionary determination "unless it is clearly shown that the trial court failed to consider the relevant facts, apply the proper standard of law and reach a conclusion a reasonable judge could reach." *Id.*, 247 Wis. 2d 541, ¶11.  Here, the circuit court stated that it used the applicable jury instructions to guide its damages awards.  Thus, we reject Schnabel's argument that the court did not apply the proper standard of law.

¶40     Moreover, the circuit court's discussion makes clear that the amount of Anderson's medical expenses was not the only fact that it considered in making its award.  Instead, the court explained that the record as a whole supported its determination.  This record includes the circuit court's findings that "since the motor vehicle accident, Anderson has had limited mobility of his right arm, pain, reduced activity playing basketball and with his grandkids, and has been more irritable" as well as its finding that Anderson was "still experiencing significant pain" that would require further surgery.  Thus, it is clear that the circuit court considered the relevant facts when making its awards for past and future pain and suffering.  Schnabel has identified no authority to suggest that a court is not permitted to consider the amount of medical expenses alongside other relevant facts.  We therefore reject Schnabel's argument that the circuit court erred when making its awards for past and future pain and suffering.

## CONCLUSION

¶41     For the foregoing reasons, we conclude that the circuit court did not erroneously exercise its discretion in admitting Dr. Neubauer's expert testimony

regarding the causal link between the accident and Anderson's shoulder pain. For that reason, we also reject Schnabel's arguments that the circuit court's factual findings and damages awards were not supported by admissible evidence. Finally, we reject Schnabel's argument that the circuit court erred when determining its damages awards for past and future pain and suffering. Accordingly, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.