**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 12, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP1095**
**2023AP1096**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2021TP126
2021TP127

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. T., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

R. T.,

      RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. T., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

v.

R. T.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1      WHITE, J.[1]  Richard appeals the orders terminating his parental rights to his son, Adam, and his daughter, Annie.[2]  Richard argues that the circuit court erroneously exercised its discretion when it concluded that terminating his parental rights was in the best interests of the children because he asserts there was not support in the record for the court's conclusions.  Upon review, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading and to maintain confidentiality, we employ pseudonyms for the children and parents in this case.  *See* WIS. STAT. RULE 809.86(1).  Additionally, although there is an appeal and order for each child, we refer to the case in the singular for ease of reading.

**BACKGROUND**

¶2    In May 2020, the Division of Milwaukee Child Protective Services (DMCPS) detained Adam, born in May 2013, and Annie, born in April 2014, then ages seven and six, when they were found in a non-moving car with their parents passed out. Richard and Joanna had ongoing drug problems and repeated interactions with DMCPS and the police. In May 2021, the State filed the petition to terminate Richard and Joanna's parental rights.[3] The petition for the termination of parental rights (TPR) alleged two grounds: continuing child in need of protection of services (CHIPS), and failure to assume parental responsibility.

¶3    On July 1, 2022, Richard entered a no contest plea to the ground of continuing CHIPS. The State relied upon the case manager's testimony to prove the ground of the petition; accordingly, the court found Richard unfit.

¶4    In November 2022, the court held the dispositional phase of the case over two days. The State called the children's foster mother and the case manager to testify. The case manager testified that the children had gone on several visits with Richard's mother; but each child expressed that they did not want to be placed to live with their grandmother. The case manager testified that the children had not been in contact with Richard since June 2021, but that he had written them a letter. She testified that the paternal grandmother was deemed safe for visits in her home, she was interested in placement with the children, and she was willing to move to a larger residence if the children were placed with her. Richard and

---

[3] The State also petitioned to terminate the parental rights of the children's mother, Joanna. Her case is not on appeal before this court.

Joanna each testified on their own behalf.[4] Richard's counsel called his mother and his sister to testify.

¶5 At the final hearing date in February 2022, the court addressed the statutory considerations of WIS. STAT. § 48.426(3)[5] related to the termination of parental rights. For the first two factors, the court found that the children were "likely to be adopted" if the TPR were granted and there did "not appear to be any age or physical or psychological barriers" to either child being adopted by the foster parents.

---

[4] In January 2022, Richard participated in three supervised visits with the children. Richard had been released from incarceration, where he had been held since shortly after the petition was filed. However, Richard relapsed, stole his sister's car, and was returned to jail, where he participated in the final day of the dispositional phase in February 2022.

[5] In determining the disposition of a TPR petition, the circuit court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶6     Next, the court addressed how long the children had been removed from their parents' care, under WIS. STAT. § 48.426(3)(e).  The court found that the children had been removed from their parents' care in May 2020, when the children were ages seven and six, and remained in out-of-home care since then.  The court considered the removals from the parents to have been "a significant amount of time" because even a year or two was significant at their young ages.  The court also noted that the children had previously been removed in 2014 due to their parent's drug addictions and reunified in 2015.  The court found that the parents had lost two older children to termination.

¶7     The court noted that after an eviction in October 2019, the family moved in with Richard's mother, who appeared not to recognize the parents' drug problems.  The court observed that while Richard said his mother said to let her keep the children when they moved out, she did not testify to that fact nor did a letter she wrote to the court concerning the case state that request.  The court expressed concern that Richard's mother knew that her son and the children had no place to live other than a car, but she did not seek help from CPS.  The court observed that Richard's mother "should have known" about the drug issues and the risks.

¶8     Next, the court found that pursuant to the considerations of WIS. STAT. § 48.426(3)(c), the children did not have a significant relationship with their parents "because of drugs and other things got in the way to have a significant or substantial relationship[.]"  The court noted that Richard "got himself incarcerated and that [took] him away from his children" and that "[n]either parent made themselves available for services and visitation for a significant amount of time."  The court expressed that it was good Richard had recently had a visits with the children, but he is struggling with addiction "and he needs help but while he needs

5

help, his children need stability." The court found that "the relationship [the children] have with each other is the most significant relationship" and they are together at the foster placement. They know their parents and their paternal grandmother, and it hoped that the foster parents can maintain relationships for the children with their biological family members. The court found that because neither child had a significant relationship with either parent, severing the legal relationship would not harm the children.

¶9 Next, the court addressed the wishes of the children, pursuant to WIS. STAT. § 48.426(3)(d). Adam, now aged nine, and Annie, aged eight, expressed to the case manager that they wished to stay with the foster parents and not live with their grandmother. Adam and Annie had "a significant bond with the caregivers and it appears [they have] adjusted well in their home. I want to say to [Adam and Annie] that the Court hears [them] and has heard what [they] had to say.

¶10 For the final factor under WIS. STAT. § 48.426(3)(f), the court found that the children would be "able to enter into a stable and permanent family relationship" if the TPR were granted because without that, the children "would languish in foster care" because neither Richard nor Joanna were "close to meeting their conditions for safe return of the children to their home[.]" The court considered that the parents are still dealing with drug issues. Further, the court concluded that because the parents had gone through a previous TPR case, they were aware of the stakes of these proceedings.

¶11 The court concluded that it was in the best interests of the children that the parental rights of both Richard and Joanna be terminated. This appeal follows.

**DISCUSSION**

¶12    Richard argues that there was no support in the record for the court's finding that it was in the children's best interests that his parental rights be terminated.  He contends that the court did not sufficiently account for the fact that he continues to express love and a desire to have his children returned to this care when he is released from incarceration or to have the children move to his family's care.  He argues that the court did not give sufficient weight to the efforts he previously made to improve his circumstances and his efforts to continue as a significant factor in his children's lives.

¶13    Termination of parental rights is governed by the Wisconsin Children's Code.  The first step is a fact-finding hearing to determine whether the grounds exist to terminate parental rights exist.  *See* WIS. STAT. §§ 48.415, 48.424.  Here, Richard pled no contest that the State could prove the continuing CHIPS ground.  The second step is the dispositional phase, in which the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child.  *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768.  "During this step, the best interests of the child are paramount."  *Id.*  The circuit court is required to consider at least the six factors for consideration in WIS. STAT. § 48.426(3).  "[T]he record should reflect adequate consideration of and weight to each factor."  *State v Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶14    "The ultimate determination of whether to terminate parental rights is discretionary with the circuit court."  *Id*, ¶27.  We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion.  WIS. STAT. § 805.17(2).  "A circuit court properly exercises its discretion when it

examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane County DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶15    Richard's first argument is that the record does not support the court's findings.    We disagree.    The circuit court carefully reviewed and considered on the record the six statutory factors and the overarching question of the best interests of the children.   The court considered that the children were adoptable and that the foster parents were ready to adopt them.   The court considered that Richard's drug addiction and resulting incarceration meant that the children had been separated from him for several years.   The court considered that the children expressed a desire to be adopted by their current foster parents and not be placed with their paternal grandmother.   The court stated in the record directly to the children "that the [c]ourt hears [them] and has heard what [they] had to say" about their placement.   The court considered that the children would most likely languish in foster care if the TPR were not granted.   We concluded there was ample support in the record for the court's decision.

¶16    Richard next argues that the court did not sufficiently account for his love for his children and his desire for their return when he was out of jail.   A parent's love is not the defining question when the court contemplates terminating parental rights.   Although "parent's rights are paramount," in the grounds phase, *Evelyn C.R.*, 246 Wis. 2d 1, ¶22, Richard does not argue that the grounds phase for the TPR was not satisfied.   The court was not being asked to determine Richard's love and desire to be with his children, but instead, "one of the most wrenching and agonizing [decisions] in the law"—whether termination is in the children's best interests. *Sheboygan Cnty. v. Julie A.B.*, 2002 WI 95, ¶¶23, 29,

255 Wis. 2d 170, 648 N.W.2d 402. Richard's argument fails because it subverts the question asked of the court.

¶17 Further, Richard argues that the court did not give weight to his desire to have his mother or sister gain custody or placement of the children. Our examination of the record shows that the circuit court had concerns about when Richard's mother's awareness of the parents' drug addition prior to the detainment of the children in May 2020, her willingness to take care of the children when there was DMCPS contact in March 2020, and his mother's failed guardianship of Richard's older child in about 2009-2010. The record reflects that the court expressed hope that the foster/adoptive parents would continue to maintain a relationship with the children's extended family. We conclude that the circuit court's considerations were based in the children's best interests and that Richard's desires have no legal basis to overcome the court's considerations.

¶18 Finally, Richard argues that the court did not give sufficient weight to the efforts he previously made to improve his circumstances and his efforts to continue as a significant factor in his children's lives. Again, we conclude that Richard asks the court to center his interests, not his children's. Wisconsin law does not "mandate the relative weight" to be on any particular factor. *Margaret H.*, 234 Wis. 2d 606, ¶29. The reviewing court's function is to ensure each factor was considered, not to weigh the factors in our own substituted judgment. Here, the circuit court acknowledged Richard's struggles with drug addiction, an illness that has taken him from his children. However, the court also found the children's need for stability and the children's wishes to weigh heavily in favor of termination being in the children's best interests. We discern no reason in the record or the law to disturb the court's findings.

**CONCLUSION**

¶19 For the reasons stated above, we conclude that the circuit court's order terminating Richard's parental rights was not an erroneous exercise of discretion and we affirm. We conclude that the record demonstrates that the court considered the relevant facts raised in testimony and evidence, it applied the proper standard of law, and it reached a reasonable decision showing rational decision-making. *See **Mable K.**,* 346 Wis. 2d 396, ¶39.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.